No. 25-1341

## UNITED STATE COURT OF APPEALS
## FOR THE TENTH CIRCUIT

JOSEPH AND SERENA WAILES, et al.,

*Plaintiffs-Appellants,*

v.

JEFFERSON COUNTY PUBLIC SCHOOLS and JEFFERSON COUNTY PUBLIC SCHOOLS
BOARD OF EDUCATION,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Colorado

Case No. 1:24-cv-02439-RMR-NRN

Honorable Regina M. Rodriguez

## RESPONSE BRIEF OF APPELLEES
### Oral Argument Requested

Eric Olson
Isabel Broer
Bianca Miyata
Olson Grimsley Kawanabe Hinchcliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
(303) 535-9151
eolson@olsongrimsley.com
ibroer@olsongrimsley.com
bmiyata@olsongrimsley.com

*Counsel for Appellees*

## Table of Contents

STATEMENT OF RELATED CASES ............................................................................1

STATEMENT OF JURISDICTION ..............................................................................1

STATEMENT OF ISSUES ...........................................................................................1

INTRODUCTION .........................................................................................................1

STATEMENT OF THE CASE ......................................................................................3

I.     Factual background ............................................................................................3

     A.    Jeffco's policy ........................................................................................4

     B.    Jeffco's accommodations ......................................................................5

     C.    Jeffco's lack of knowledge of students' sex assigned at birth .....................6

     D.    B.R.'s Outdoor Lab trip in 2023 ..........................................................6

     E.    D.W.'s Philadelphia and Washington, D.C. trip in 2023 ...........................7

     F.    A.B.'s Outdoor Lab trip in 2025 ..........................................................8

     G.    M.P.'s basketball commitments ...........................................................9

     H.    G.W.'s and B.W.'s East Coast trip in 2025 ...........................................9

II.    Procedural background ....................................................................................10

STANDARD OF REVIEW ..........................................................................................12

SUMMARY OF THE ARGUMENT ............................................................................13

ARGUMENT ...............................................................................................................16

I.     The Perlmans do not have standing. .................................................................16

     A.    An injury must be actual or imminent to confer standing. .......................16

     B.    The Perlmans do not allege an injury in fact. .........................................17

II.    The District Court properly dismissed Plaintiffs' claims for failure to
state a claim. ....................................................................................................18

     A.    Plaintiffs fail to state free exercise claims. ............................................18

          1.    Jeffco's policy is neutral and generally applicable. ...................18

          2.    Jeffco's policy survives rational basis review. ...............................25

          3.    Any burden imposed by Jeffco's policy is not of the same
character as those in *Mahmoud* and *Yoder*. .......................................27

4.      Even if strict scrutiny applies, Jeffco's policy survives that standard. ...............................................................................31

B.     Plaintiffs fail to state substantive due process claims...............................34

1.      Jeffco's policy does not infringe the limited parental right to direct a child's upbringing and education. .......................................35

2.      Jeffco's policy does not infringe on students' right to bodily privacy..........................................................................................38

III.   The District Court properly denied Plaintiffs' Renewed Motion for Preliminary Injunction. ........................................................................................42

A.     Plaintiffs failed to show they were likely to succeed on the merits of their claims...........................................................................................43

B.     The remaining factors weigh against preliminarily enjoining Jeffco's policy. ....................................................................................43

CONCLUSION .............................................................................................................44

STATEMENT REGARDING ORAL ARGUMENT....................................................45

**Table of Authorities**

**Cases**

*Abdi v. Wray*,
    942 F.3d 1019 (10th Cir. 2019)........................................................35, 38, 42

*Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*,
    536 U.S. 822 (2002) ...............................................................................39

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) .......................................................................19, 21, 25

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .............................................................................. 16, 17

*Cumbey v. Meachum*,
    684 F.2d 712 (10th Cir. 1982) ................................................................. 38, 40

*Denver Homeless Out Loud v. Denver*,
    32 F.4th 1259 (10th Cir. 2022)..................................................................42

*Dep't of State v. Muñoz*,
    602 U.S. 899 (2024) .........................................................................35, 36, 39

*Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*,
    No. 23-3740, 2025 WL 2453836 (6th Cir. Aug. 26, 2025) ....................... 27, 28, 29, 37

*Doe v. Boyertown Area Sch. Dist.*,
    897 F.3d 518 (3d Cir. 2018) ......................................................... 32, 34, 39, 40

*Doe v. Franklin Square Union Free Sch. Dist.*,
    No. 2:21-cv-05012, 2025 WL 2733457 (E.D.N.Y. Sept. 25, 2025)............................36

*Doe v. Luzerne Cnty.*,
    660 F.3d 169 (3rd Cir. 2011)....................................................................40

*Employment Div. v. Smith*,
    494 U.S. 872 (1990) .............................................................................. 19, 22

*Free the Nipple-Fort Collins v. City of Fort Collins*,
    916 F.3d 792 (10th Cir. 2019)...............................................................12, 13, 43

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021) ..................................................................19, 22, 23, 31, 33

*Grace United Methodist Church v. City of Cheyenne*,
    451 F.3d 643 (10th Cir. 2006)................................................................. 19, 26

*Heideman v. S. Salt Lake City*,
    348 F.3d 1182 (10th Cir. 2003)..................................................................43

*Hobby Lobby Stores, Inc. v. Sebelius,*
  723 F.3d 1114 (10th Cir. 2013) .................................................................42

*In re Overstock Sec. Litig.,*
  119 F.4th 787 (10th Cir. 2024) ...................................................................3

*Johnson v. Reyna,*
  57 F.4th 769 (10th Cir. 2023) ...................................................................12

*Khalik v. United Air Lines,*
  671 F.3d 1188 (10th Cir. 2012) .................................................................12

*Lee v. Poudre Sch. Dist. R-1,*
  135 F.4th 924 (10th Cir. 2025) ........................................................... 35, 37

*Lehnhausen v. Lake Shore Auto Parts Co.,*
  410 U.S. 356 (1973) .................................................................................26

*Mahmoud v. Taylor,*
  606 U.S. 522 (2025) ..................................... 14, 17, 27, 28, 29, 30, 31

*Martinez v. Mafchir,*
  35 F.3d 1486 (10th Cir. 1994) ..................................................................31

*Masterpiece Cakeshop v. Colo. Civ. Rts. Comm'n,*
  584 U.S. 617 (2018) ............................................................................ 19, 21

*Mead v. Rockford Pub. Sch. Dist.,*
  800 F. Supp. 3d 836 (W.D. Mich. 2025) ............................................... 26, 29

*Murthy v. Missouri,*
  603 U.S. 43 (2024) ...................................................................................16

*N. Carolina State Bd. of Ed. v. Swann,*
  402 U.S. 43 (1971) ...................................................................................18

*New York v. Ferber,*
  458 U.S. 747 (1982) .................................................................................32

*Nken v. Holder,*
  556 U.S. 418 (2009) .................................................................................42

*Parents for Privacy v. Barr,*
  949 F.3d 1210 (9th Cir. 2020) ...................................................... 26, 37, 40, 41

*Petrella v. Brownback,*
  697 F.3d 1285 (10th Cir. 2012) .................................................................12

*Reno v. Flores,*
  507 U.S. 292 (1993) .................................................................................35

*RoDa Drilling Co. v. Siegal,*
552 F.3d 1203 (10th Cir. 2009)................................................................13

*Runyon v. McCrary,*
427 U.S. 160 (1976) ................................................................37

*Sable Comm'ns of Cal., Inc. v. FCC,*
492 U.S. 115 (1989) ................................................................32

*St. Mary Catholic Parish v. Roy,*
154 F.4th 752 (10th Cir. 2025)................................................13, 19, 25

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) ................................................................ 16, 17

*Swanson v. Guthrie Indep. Sch. Dist. No. I-L,*
135 F.3d 694 (10th Cir. 1998)................................................26, 37, 38

*Tandon v. Newsom,*
593 U.S. 61 (2021) ................................................................24

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
582 U.S. 449 (2017)................................................................25

*Vernonia Sch. Dist. 47J v. Acton,*
515 U.S. 646 (1995) ................................................................39

*Waller v. City & Cnty. of Denver,*
932 F.3d 1277 (10th Cir. 2019)................................................................12

*Washington v. Glucksberg,*
521 U.S. 702 (1997)................................................................35

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ................................................................42

*Wisconsin v. Yoder,*
406 U.S. 205 (1972) ................................................................ 14, 27, 30, 31

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1357 (4th
ed. 2025)................................................................3

Colo. Rev. Stat. § 25-2-113.8................................................................6

U.S. Const. art. III, § 2................................................................16

## STATEMENT OF RELATED CASES

There are no prior or related appeals.

## STATEMENT OF JURISDICTION

Jeffco is dissatisfied with the Plaintiffs' jurisdictional statement only because it omits discussion of the Perlmans' lack of standing. Because the Perlmans do not have standing, the federal courts lack subject matter jurisdiction over their claims.

## STATEMENT OF ISSUES

1. Do the Perlmans, the family of a student who does not allege she has overnight trips planned, have standing to sue about Jeffco's overnight trip policy?

2. The District Court found that Jeffco's policy did not violate the remaining Plaintiffs' First Amendment and substantive due process protections. Was this conclusion correct?

3. Because the remaining Plaintiffs could not succeed on the merits of their claims, the District Court denied their Renewed Motion for Preliminary Injunction. Did the District Court abuse its discretion?

## INTRODUCTION

Jefferson County Public Schools and its Board of Education are driven by the school district's mission to "provide a world-class education that prepares *all* Jeffco students for bright and successful futures as local and global citizens." App. Vol. 2 at 191 (emphasis added). As Jeffco fulfills that mission, it acts in accordance with its values: Belonging, Equity, Excellence, Focus on Students, and Integrity. *Id.* Belonging—for all

1

students, staff, families, and communities to feel that they are safe, accepted, respected, included, and valued—is key to Jeffco achieving its aims. *Id.* Students learn best when they feel they belong to their school community. *Id.* And so Jeffco keeps that value in mind as it develops and implements specific policies, like the district's policy on "Equal Education Opportunities—Transgender Students."

Plaintiffs' requested relief would undermine Jeffco's efforts. It would effectively exclude already vulnerable students—transgender students—from certain activities and spaces. It would require Jeffco to pry into families' private matters to determine every student's sex assigned at birth and create a registry of that sensitive information.

And Plaintiffs' requested relief isn't necessary to address their concerns. Plaintiffs mischaracterize Jeffco's policy and practices and ignore accommodations Jeffco already makes available on optional overnight trips. Plaintiffs' children can already participate in these trips in ways that respect their privacy concerns. Indeed, some Plaintiffs already have.

The District Court correctly dismissed Plaintiffs' claims and denied their request for a preliminary injunction. Certain Plaintiffs, the Perlmans, do not sufficiently allege an injury in fact and so have no standing to participate in this suit. The remaining Plaintiffs' claims do not plausibly allege constitutional violations. Thus, Plaintiffs are not likely to succeed on the merits, which forecloses their preliminary injunction. The District Court's dismissal of the case and its denial of a preliminary injunction should be affirmed. But in the unlikely event this Court is not persuaded that dismissal was

appropriate, the proper remedy is not, as Plaintiffs claim, to "order the district court to enjoin Jeffco" from operating under its longstanding policy. Appellants Br. at 55. Rather, the Court should return the case to the District Court for further proceedings, including summary judgment on the fully developed record. The parties have completed fact and expert discovery, though that record is not at issue in this appeal.

## STATEMENT OF THE CASE

### I.    Factual background

Plaintiffs' Opening Brief does not accurately state the factual background.[1] Jeffco, the common name for Jefferson County Public Schools, is the second-largest school district in Colorado, serving around 77,000 students across 155 schools with about 14,000 employees. App. Vol. 1 at 191. To meet its students' needs, Jeffco has a robust statement of its Mission, Vision, and Values and detailed policies, all publicly available. *Id.* This case focuses on one policy, but changing that policy, as Plaintiffs

---

[1] Jeffco draws from the entire record on appeal, including facts developed in the two preliminary injunction motions decided by the District Court, consistent with Tenth Circuit precedent and Wright & Miller's Federal Practice and Procedure. 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1357 (4th ed. 2025) ("[C]ourts resolving Rule 12(b)(6) motions may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."); *In re Overstock Sec. Litig.*, 119 F.4th 787, 794 n.3 (10th Cir. 2024) (citing Wright & Miller, § 1357). The District Court correctly did so—looking at the entire record before it as part of its analysis of the two Preliminary Injunctions and the Motion to Dismiss. *See* App. Vol. 3 at 686, 694 n.6, 696 n.8. Plaintiffs do not take issue with that approach on appeal.

unsuccessfully requested in the District Court, would create significant harm and disruptions across Jeffco. *Id.* at 195.

### A.    Jeffco's policy

Plaintiffs complain about District Policy JB-R2, "Equal Education Opportunities —Transgender Students." App. Vol. 3 at 427-29. Its purpose is to "foster an educational environment that is safe and free from discrimination for all students, regardless of gender identity or expression." *Id.* at 427. It states that it "should be interpreted consistent with the goals of reducing the stigmatization of and improving the education integration of transgender and gender nonconforming students [and] maintaining the privacy of all students." *Id.* And it reflects state law. *See* App. Vol. 2 at 312-14.

Like all district policies, families and members of the public can access the policy on the Board of Education's website. App. Vol. 3 at 427-29 (printout of policy from website). Jeffco also identifies and explains the policy on the FAQ page for Outdoor Lab, an optional four-day program for Jeffco's sixth graders held at two mountain campuses. App. Vol. 1 at 109, 64.

Jeffco's policy does not promise transgender students "individualized accommodations." Rather, the section on "Overnight Activity and Athletic Trips" states that transgender students should be assigned to overnight lodging with students who share the student's consistently asserted gender identity. App. Vol. 3 at 429.

4

Nor do Jeffco's practices allow a transgender student to choose whether to room in a girls' or boys' room. *See id.* at 647-54. One high school principal explained how the policy works in practice in a declaration. When a transgender female applied to be a High School Leader for Outdoor Lab and asked to stay in a boys' cabin, Jeffco's policy did not allow that placement because she consistently identified as female at school. *See id.* at 653-54. The transgender female student was not allowed to choose where she wanted to room and opted instead to use an accommodation: participating during the day only. *Id.*

### B.    Jeffco's accommodations

Accommodations are available to all Jeffco students—for any reason. All families are invited to discuss concerns with trip leaders and to ask for accommodations from them. App. Vol. 2 at 322-23. The materials families receive before students travel make clear that accommodations for any reason are available. The presentation on Outdoor Lab for families, for example, states that "ALL Jeffco 6th graders are invited to attend" and that "[a]ccommodations for most student needs can be met;" it also invites families to ask "[i]ndividual questions." App. Vol. 1 at 87, 103; App. Vol. 3 at 475. For Jeffco trips run by EF, a nationwide private educational tour company, EF's materials similarly discuss available rooming accommodations. App. Vol. 3 at 450. "Students may request twin room[s] … for an additional fee," and families can contact EF "[f]or other rooming options." *Id.* And as Plaintiffs' trips themselves show, *see infra* §§ I.F, I.G, Jeffco commonly accommodates students' requests.

5

### C.   Jeffco's lack of knowledge of students' sex assigned at birth

Jeffco does not know the sex assigned at birth of each of its students. When a family enrolls a student in Jeffco, they must provide documentation of the student's identity. Jeffco accepts several forms of identity verification, from a birth certificate to a baptism certificate. App. Vol. 2 at 153. Jeffco uses that documentation to mark the student's "legal gender" in Infinite Campus, Jeffco's computerized student information system. *Id.* at 153 n.1.

While Jeffco has every student's legal gender, it does not follow that Jeffco knows every student's sex assigned at birth. It doesn't. That is because Colorado law has, since 2019, allowed a family to change a minor's sex designation on their birth certificate, and there is no notation that the birth certificate has been revised. Colo. Rev. Stat. § 25-2-113.8. When a family changes the sex designation on a student's birth certificate to align with the student's gender identity before enrolling at Jeffco, Jeffco does not know that the student's gender identity differs from their sex assigned at birth. And families may enroll students in Jeffco using various identity verification documents that do not display any sex assigned at birth for a student at all. App. Vol. 2 at 153.

### D.   B.R.'s Outdoor Lab trip in 2023

Every sixth-grade student in Jeffco has the option of participating in Outdoor Lab. App. Vol. 2 at 178-79. There, students stay overnight in gender-segregated bunkhouses, which are supervised by High School Leaders and (college-age) Interns. App. Vol. 1 at 88; App. Vol. 2 at 180-81.

6

Jeffco protects students' privacy in those Outdoor Lab bunkhouses in several ways. The bunkhouses contain single-occupancy beds, and rules forbid students from being on or in someone else's bed. App. Vol. 2 at 180. Jeffco instructs students to use discretion when they change, and the bunkhouses have private changing spaces. *Id.* at 181. Bathrooms are also segregated by gender and have single-occupancy stalls. *Id.* at 181; App. Vol. 3 at 478 (pictures of Outdoor Lab bathrooms and showers). Showers have opaque privacy curtains. App. Vol. 2 at 181. A High School Leader stands behind another wall to time students' showers but cannot see the shower stalls. *Id.*

If a student does not want to stay overnight at Outdoor Lab for any reason but still wants to participate, they can attend as a day student. The Brinkmans requested and received this option. *Id.* at 390, 393; *see infra* § I.F.

### E.    D.W.'s Philadelphia and Washington, D.C. trip in 2023

Jeffco offers all fifth graders the opportunity to travel to Philadelphia and Washington, D.C. App. Vol. 2 at 238-39. The trip is optional and is not tied to the fifth-grade curriculum. *Id.* Jeffco partners with EF to offer the trip. *Id.* EF books the hotels for the trip. *Id.* EF's General Terms and Conditions, which all participating families receive, explain that a student may request a lower-occupancy room (fewer than four students), identify alternative rooming arrangements available, and provide contact information for families to discuss "other rooming options." *Id.* at 242, 246.

Before the 2023 trip that D.W. attended, no one at Jeffco knew that the student group included a transgender female student. *Id.* at 240. Nor could they have. *Id.*; *supra* § I.C.

Once learning of D.W.'s concern, Jeffco quickly granted her request. D.W. never shared a room with the transgender female student overnight. App. Vol. 2 at 241. Trip leaders quickly and discreetly moved D.W. to another room when she expressed discomfort with her transgender female roommate, and D.W. stayed in another room for the trip's duration. *Id.* at 240-41.

### F.    A.B.'s Outdoor Lab trip in 2025

The Brinkmans received an accommodation they asked for. Jeffco administrators, from A.B.'s principal to its legal counsel, responded to the Brinkmans' repeated entreaties, including a request that A.B. be able to participate as a day student—exactly what Jeffco offered and what A.B. ultimately did.

In September 2024, Mrs. Brinkman emailed Principal Josh Shapiro to state that her family did not "want [A.B.] staying overnight and so…request[ed] to pick her up each night." App. Vol. 3 at 651. Principal Shapiro then met in-person with Mrs. Brinkman to explain Jeffco's policy and to offer that A.B. could attend Outdoor Lab as a day student, as Mrs. Brinkman had requested. *Id.* Later that fall, in response to more emails and requests from Mrs. Brinkman, Jeffco's legal counsel, Julie Tolleson, and Community Superintendent Wes Paxton again responded to her emails, reiterating that if A.B. and her family were uncomfortable with the bunkhouse arrangements at

8

Outdoor Lab, A.B.—like any Jeffco student—could participate in Outdoor Lab as a day student, as Mrs. Brinkman originally requested. *See id.* at 652; App. Vol. 2. at 390, 393. In December 2024, Mrs. Brinkman told Principal Shapiro of her family's "decision" to "pick [A.B.] up each night and drop her off each morning." App. Vol. 3 at 652. She did so. *Id.*

### G.    M.P.'s basketball commitments

At the time Plaintiffs filed suit and moved for a preliminary injunction, M.P. was a freshman at Golden High School. App. Vol. 2 at 237. She was not on the varsity girls basketball team, and no overnight trips had been scheduled for any of Golden High School's girls basketball teams. *Id.* And even when Plaintiffs filed their Amended Complaint, M.P. still was not on the varsity basketball team and did not allege that she would travel overnight for any game. App. Vol. 2 at 376. Rather, she just claimed that she had been "told" she would "play some varsity games" and alleged that some varsity tournaments require overnight stays. *Id.* But she did not allege that anyone said she would travel to any of those varsity tournaments with overnight stays. *Id.*

If M.P. were to play on a team with an overnight trip, her coaches would ask M.P. and her teammates to choose their roommates and do their best to honor those requests. App. Vol. 3 at 640.

### H.    G.W.'s and B.W.'s East Coast trip in 2025

Though Plaintiffs ignore it in their Opening Brief, their Complaint and Renewed Motion for Preliminary Injunction alleged that Jeffco wouldn't accommodate the

Wailes' twins, G.W. and B.W., on their (then upcoming) trip to Washington, D.C., Philadelphia, and New York City in June 2025. *See* App. Vol. 2 at 368, 387; App. Vol. 3 at 576. That was the same trip their older sister D.W. went on in 2023. *See supra* § I.E. As in 2023, the trip was optional and not tied to any core curriculum. *See* App. Vol. 2 at 238-39. Jeffco again partnered with EF to offer the trip. App. Vol. 3 at 642.

Plaintiffs did not allege in their Complaint or Renewed Motion for Preliminary Injunction that they requested any accommodation on G.W. and B.W.'s trip. Jeffco had accommodations available that would have foreclosed the possibility that G.W. or B.W. might be assigned to share a room with students of the opposite sex assigned at birth. For example, Jeffco would have granted a request for G.W. or B.W. to share a double-occupancy room or to sleep in a room with their parent. App. Vol. 2 at 242. EF's General Terms and Conditions offered those options and encouraged families to discuss "other rooming options." App. Vol. 2 at 242, 246.

## II.    Procedural background

Plaintiffs sued Jeffco and its Board of Education, alleging that Jeffco violated: (1) the Parent Plaintiffs' substantive due process rights to direct their children's upbringing and education, (2) the Parent Plaintiffs' free exercise rights, (3) the Student Plaintiffs' substantive due process rights to bodily privacy, and (4) the Student Plaintiffs' free exercise rights.

Later, they sought to preliminarily enjoin Jeffco, asking the District Court to "stop JeffCo from placing Student Plaintiffs in overnight accommodations with

10

students of the opposite sex" on alleged upcoming overnight trips. App. Vol 1 at 19. The District Court denied Plaintiffs' motion for lack of standing. App. Vol. 2 at 336-53. The District Court concluded that Plaintiffs had not shown "a real and immediate threat of repeated injury" because they had not availed themselves of accommodations Jeffco makes available and because it was uncertain whether trips would happen. *Id.*

Jeffco moved to dismiss the suit under Rule 12(b), arguing that the Perlmans lacked standing and that Plaintiffs failed to state a claim. Instead of responding, Plaintiffs amended their Complaint. App. Vol. 2 at 354-420. Jeffco again moved to dismiss the suit under Rule 12(b), explaining that the Perlmans still did not have standing and the amended allegations did not plausibly suggest that Jeffco violated Plaintiffs' rights. App. Vol. 3 at 510-31.

Almost two months later, Plaintiffs filed a "Renewed" Motion for Preliminary Injunction. *Id.* at 569-91. Jeffco opposed the motion because Plaintiffs still did not have standing for a preliminary injunction and could not show they were substantially likely to succeed on the merits. *Id.* at 617-37.

In the meantime, the parties completed discovery in July 2025, taking twenty fact and expert depositions and exchanging thousands of documents. One week after discovery ended, the District Court granted Jeffco's Motion to Dismiss. *Id.* at 685-704. The District Court dismissed the Perlmans for lack of standing under Rule 12(b)(1). *Id.* at 689-90. It dismissed the remaining claims with prejudice for failure to state a claim under Rule 12(b)(6). *Id.* at 690-703. The District Court also denied Plaintiffs' Renewed

Motion for Preliminary Injunction because Plaintiffs did not show a substantial likelihood of succeeding on the merits and entered final judgment on August 7, 2025. *Id.* at 703-06.

Plaintiffs timely appealed the District Court's Order. *Id.* at 707-09.

## STANDARD OF REVIEW

This Court reviews the dismissal of the Perlmans for lack of standing de novo, "applying the same standard used by the district court." *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012) (quotation omitted). Plaintiffs "bear the burden of establishing standing." *Id.*

This Court also reviews a dismissal for failure to state a claim de novo. *Johnson v. Reyna*, 57 F.4th 769, 774 (10th Cir. 2023). The Court accepts all well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). But "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.*

This Court reviews a district court's decision to grant or deny a preliminary injunction for abuse of discretion. *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 796 (10th Cir. 2019). A court abuses its discretion "if it rests on an erroneous

12

legal conclusion or lacks a rational basis in the record." *Id.* And so this Court reviews legal conclusions de novo and fact findings for clear error. *Id.* at 796-97. This abuse of discretion standard is "high," requiring an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (quotation omitted).

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed the Perlmans from this case. They lack standing because they failed to allege they suffered an injury in fact. Their daughter, M.P., was on the girls junior varsity basketball team at her Jeffco high school when Plaintiffs filed suit (during the 2024-25 school year), but neither that team nor the girls varsity team had any overnight trips planned. Plaintiffs contend that M.P. will continue playing basketball for her high school but still do not allege that M.P. has any overnight trips planned. Plaintiffs' allegations of *possible* future injury—maybe M.P. will make the varsity team, maybe that varsity team will go on an overnight trip that includes her— are insufficient to confer standing.

The District Court also correctly concluded that the other Plaintiffs failed to state claims under Rule 12(b)(6). First, Plaintiffs fail to state claims under the Free Exercise Clause. This Court recently reiterated that so long as a school policy is neutral and generally applicable, an incidental conflict with some students' religion is not a violation of the Free Exercise Clause. *St. Mary Catholic Parish v. Roy*, 154 F.4th 752, 765 (10th Cir. 2025), *pet. for cert. filed* Nov. 17, 2025 (No. 25-581). And Jeffco's policy is both neutral

and generally applicable under this Court's standards. It is neutral because it is not intended to restrict religious practices; it in fact accommodates them. It is generally applicable because it does not provide individualized exemptions and does not prohibit religious conduct while permitting similar secular conduct. Jeffco's policy easily satisfies the rational basis review applied to neutral and generally applicable laws.

Plaintiffs are incorrect that *Mahmoud v. Taylor*, 606 U.S. 522 (2025), requires Jeffco's policy be subjected to strict scrutiny. *Mahmoud* recognized a narrow circumstance in which strict scrutiny applies to a policy that "'substantially interfere[s] with the religious development' of the parents' children" and "pose[s] 'a very real threat of undermining' the religious beliefs and practices that the parents wish to instill in their children." *Mahmoud*, 606 U.S. at 565 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972)). But that circumstance is not present here. Jeffco's policy does not impose a burden "of the same character as that imposed in *Yoder*" and later in *Mahmoud*. *See Mahmoud*, 606 U.S. at 564. Despite Plaintiffs' mischaracterizations of Jeffco's policy and practices, *Mahmoud* differs in important ways from this case and does not control it. Even if Jeffco's policy did trigger strict scrutiny, it would still survive. It serves two compelling interests—fostering an educational environment conducive to all students' learning and reducing discrimination against transgender students—and is narrowly tailored to those ends. Because Jeffco's policy survives rational basis review and strict scrutiny, Plaintiffs fail to state claims under the Free Exercise Clause.

14

Second, Plaintiffs fail to state claims under the Fourteenth Amendment's substantive due process protections. On neither their parental right claim nor their bodily privacy claim can they establish infringement of a fundamental right specifically recognized by the Supreme Court or this Court or otherwise deeply rooted in history and tradition. Plaintiffs only offer broad platitudes about parental rights and bodily privacy and snippets from inapposite cases. But that's insufficient to show that a fundamental right is at stake. Because no fundamental right is at issue, rational basis review applies under this Court's analytical framework. And Jeffco's policy easily survives that review.

The District Court did not abuse its discretion in denying Plaintiffs' request for a preliminary injunction. All the factors for a preliminary injunction weigh against Plaintiffs' motion. Perhaps most importantly, Plaintiffs have not shown that they were likely to succeed on the merits for the same reasons they fail to state a claim.

The Court should affirm the District Court's Order. But if this Court is not satisfied with the District Court's rulings, since fact and expert discovery is completed, it should reverse and remand for a full assessment of the facts on summary judgment.

## ARGUMENT

### I. The Perlmans do not have standing.

The Perlmans lack standing to assert their claims.

#### A. An injury must be actual or imminent to confer standing.

Federal courts only have jurisdiction to hear actual cases and controversies. U.S. Const. art. III, § 2. To establish Article III standing, plaintiffs "must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs must establish standing at the time they brought the lawsuit and maintain it thereafter. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (citing *Carney v. Adams*, 592 U.S. 53, 59 (2020)).

The injury-in-fact element requires the plaintiff to show that the injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List*, 573 U.S. at 158 (quotation omitted). Allegations of future injury only suffice "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). "Allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (quotation omitted).

16

**B.    The Perlmans do not allege an injury in fact.**

The Perlmans did not show an injury in fact. In the Amended Complaint, they alleged only future injury. M.P. played on the girls junior varsity basketball team and might play in some varsity games. App. Vol. 2 at 376. The varsity team travels for tournaments that require overnight stays. *Id.* But Plaintiffs did not allege that M.P. would play in any tournaments or that she would join the team on overnight travel. Plaintiffs now add in their Opening Brief a claim that M.P. "intends to continue playing as a sophomore this year" (2025-26) but still do not contend that M.P. has any overnight trips scheduled. Appellants Br. at 29. Even if the Court were to consider Plaintiffs' newly added claims, Plaintiffs fail to allege that "there is a 'substantial risk' that the harm will occur." *See Susan B. Anthony List*, 573 U.S. at 158 (quotation omitted). These are merely allegations of *possible* future injury—insufficient to constitute an injury in fact. *Clapper*, 568 U.S. at 409. Many high school students want to play on the traveling basketball team, but not all can. Wants alone do not suffice for standing.

*Mahmoud* does not support standing here. Appellants Br. at 30. There, the Supreme Court held that "a plaintiff must show that 'the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Mahmoud*, 606 U.S. at 560 (quoting *Susan B. Anthony List*, 573 U.S. at 158). The Court was satisfied that those plaintiffs had made that showing, given that the school district did "not dispute that it is introducing the storybooks into classrooms, that it is requiring teachers to use them as part of instruction, and that it has encouraged teachers to approach classroom

17

discussions in a certain way." *Id.* While the Court stated that it did not "need to 'wait and see' how a particular book is used in a particular classroom on a particular day before evaluating the parents' First Amendment claims," *id.*, that's very different from this case, where the Perlmans just allege that M.P. may play for a different basketball team at some unknown point in the future and that different team may have an overnight trip. Unlike the Perlmans, the parents in *Mahmoud* alleged that "the clear and undisputed instructions of the Board" would impact their children. *Id.* There was no team to make or tournament to be selected for.

Because the Perlmans do not show an injury in fact, they lack standing. The District Court correctly dismissed them from the case.

## II. The District Court properly dismissed Plaintiffs' claims for failure to state a claim.

### A. Plaintiffs fail to state free exercise claims.

Jeffco's policy survives any level of constitutional scrutiny and does not violate Plaintiffs' free exercise rights. Because Plaintiffs fail to state a claim for relief under the Free Exercise Clause, the District Court was right to dismiss the claims.

#### 1. Jeffco's policy is neutral and generally applicable.

School districts have "wide discretion in formulating school policy." *N. Carolina State Bd. of Ed. v. Swann*, 402 U.S. 43, 45 (1971). And school policies may "incidentally conflict[]" with some aspects of some students' religion without violating the Free Exercise Clause so long as the policy is a "valid and neutral [policy] of general

18

applicability." *St. Mary Catholic Parish,* 154 F.4th at 765. School districts "must be able to enforce" neutral and generally applicable policies "equally" across all students, "no matter an individual's beliefs, lest we 'permit every citizen to become a law unto himself.'" *Id.* (quoting *Employment Div. v. Smith*, 494 U.S. 872, 879 (1990)).

### a. Jeffco's policy is neutral because it accommodates religious beliefs and does not restrict practices because of their religious nature.

To demonstrate that a policy is not neutral, Plaintiffs must show that the policy "'proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature.'" *Id.* (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021)). "Neutrality is, essentially, a question of intent," and a policy "'is neutral so long as its object is something other than the infringement or restriction of religious practices." *Id.* (quoting *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649-50 (10th Cir. 2006)).

Courts assess neutrality by beginning with the policy's text and then looking to the effect of the policy "in its real operation." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533-35 (1993). Additional relevant factors include "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Masterpiece Cakeshop v. Colo. Civ. Rts. Comm'n*, 584 U.S. 617, 639 (2018) (quotation omitted).

Plaintiffs do not discuss the policy's intent or its object—ignoring this Court's standard for neutrality recently reiterated (after *Mahmoud*) in *St. Mary Catholic Parish*. Appellants Br. at 35-38.

Jeffco's policy easily satisfies this review. First, the policy does not even mention religion, much less discriminate on its face. Its explicit object is to "foster an educational environment that is safe and free from discrimination for all students." App. Vol. 3 at 427. Additional goals include "reducing the stigmatization of and improving the education integration of transgender and gender nonconforming students, maintaining the privacy of all students, and fostering cultural competence and professional development for school staff." *Id.*

Second, how the policy works in practice does not suggest that its object is to target religion. Plaintiffs make no such claim, which should end the inquiry. Rather, Plaintiffs grossly mischaracterize the policy to claim that is not neutral—Jeffco does not "promis[e]" to accommodate transgender students' overnight lodging requests "while refusing to accommodate the requests of religious students." Appellants Br. at 38. Jeffco applies its policy to all students and will not, for example, permit a transgender student, regardless of whether they are a "religious student," to stay in a room with students different from their consistently asserted gender. *Supra* §§ I.A, I.B. And Jeffco freely grants reasonable accommodations to *all* students regardless of religion. Indeed, Plaintiffs themselves have requested and received accommodations. *Supra* §§ I.B, I.F. Plaintiffs' suggestion that they are adversely impacted by the policy's implementation

20

because Jeffco hasn't guaranteed rooming assignments based on Plaintiffs' preferred criteria is wholly insufficient to suggest impermissible targeting. Assigning overnight lodging on school trips in a manner that allows all students to safely learn is "a legitimate concern of government for reasons quite apart from discrimination" against religion. *See Church of Lukumi Babalu Aye*, 508 U.S. at 535.

Finally, the other relevant factors confirm Jeffco's policy is not hostile to religion. *See Masterpiece Cakeshop*, 584 U.S. at 639. Plaintiffs' one-sentence nod to the policy's history is unconvincing as it has nothing to do with religion and they identify no change in practice. *See* Appellants Br. at 38. Jeffco has provided and still provides any student who wants more privacy a reasonable accommodation. *Supra* § I.B. This minor policy revision is a far cry from the histories of regulations at issue in *Masterpiece Cakeshop* and *Church of Lukumi Babalu Aye*, where the Supreme Court found evidence of religious animus in public officials' statements. 584 U.S. at 634-36; 508 U.S. at 540-42.

Jeffco's policy is neutral. But should the Court have any lingering questions about how the policy operates in practice or has evolved over time, the Court should remand for the District Court's further proceedings based on the factual record not currently before this Court.

### b. Jeffco's policy is generally applicable because it does not provide individualized exemptions or prohibit religious conduct while permitting similar secular conduct.

For the policy to fail the generally applicable requirement, Plaintiffs must show it either (1) "invites the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions'," *Fulton*, 593 U.S. at 533 (quoting *Smith*, 494 U.S. at 884), or (2) "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," *id.* at 534. Jeffco's policy does neither.

Jeffco's policy does not provide for individualized exemptions. The policy applies to all students: "students who are transgender should be assigned to share overnight accommodations with other students that share the student's gender identity consistently asserted at school." App. Vol. 3 at 429. There's no "exemption" from this. For example, Jeffco's policy does not allow transgender students to share overnight rooms with students of the same sex assigned at birth, even if that's what the transgender students or other students want. *Supra* § I.B.

Plaintiffs' basic error in claiming the policy is not generally applicable is that they assume individual consideration means individual exemptions. That is not the case, and they have no proof whatsoever of any exemptions occurring under the policy.

Plaintiffs misconstrue the policy when they claim that "Jeffco considers whether to place students in overnight accommodations with the opposite sex on a 'case-by-

22

case basis.'" Appellants Br. at 36. That is not what the policy says, and Plaintiffs nowhere allege that a transgender student has ever received an exemption from the policy because of a "case-by-case" consideration. What the policy actually says is, "In the planning of sleeping arrangements during overnight activity and athletic trips, the needs of students who are transgender shall be assessed on a case-by-case basis…." App. Vol. 3 at 429. Nor does the "[i]n most cases, students who are transgender should be assigned to share overnight accommodations with the other students that share the student's gender identity consistently asserted at school" language imply that in some cases students receive an exemption. *Id.*

Rather, both the "case-by-case" and "in most cases" sentences just ensure that Jeffco understands the needs of the students in "maximizing the student's social integration, providing equal opportunity to participate in overnight activity and athletic trips, ensuring the student's safety and comfort, and minimizing the stigmatization of the student." *Id.* In some cases, transgender students, like other students who request an accommodation, may need a more private accommodation, to stay with a parent, or to just participate during the day. But that accommodation does not exempt them from the policy or allow any student to share a room with students with a different consistently asserted gender identity. Nowhere in the policy or its application do Plaintiffs identify a situation where Jeffco will room transgender students wherever they want or otherwise establish "a system of individual exemptions," *Fulton*, 593 U.S. at 535.

23

Nor does Jeffco's policy prohibit religious conduct while permitting similar secular conduct. Plaintiffs try to characterize the policy's statement that a transgender student shall not be required to share an overnight room with a student of a different gender identity as an "accommodation" and argue that they and other religious students who share their beliefs are not afforded "such accommodation." Appellants Br. at 37. That argument is wrong because the policy contains no such accommodation. The language "[u]nder no circumstance shall a student who is transgender be required to share a room with students whose gender identity conflicts with their own" is just a restatement of the policy that students should be assigned based on "that student's gender identity consistently asserted at school." App. Vol. 3 at 429. Imagine a different policy: "students should only use their district computer for schoolwork." A policy that continued, "Under no circumstance should a student use their computer for tasks other than schoolwork" does not create an accommodation of any sort.

What Plaintiffs want is a guarantee offered to no other student that they will not be assigned an overnight room with someone of another sex assigned at birth. The "comparable secular activity" to that would be a student asking for a guarantee they will not be assigned to an overnight room with someone of another sex assigned at birth for another, non-religious reason. *See Tandon v. Newsom*, 593 U.S. 61, 62 (2021). Plaintiffs do not suggest that Jeffco would grant that student's request—and Jeffco would not. Jeffco would not grant *any* student's request for a guarantee that they will not be assigned to an overnight room with someone of another sex assigned at birth, regardless

24

of that student's motivation. That distinguishes Jeffco's policy from those in the cases Plaintiffs cite. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462 (2017); *Church of Lukumi Babalu Aye*, 508 U.S. at 542-45.

This Court's analysis in *St. Mary Catholic Parish* provides further support for this conclusion. There, in a Free Exercise Clause challenge to Colorado's Universal Preschool Program's nondiscrimination requirements, the Court held that a regulatory framework did not contain "individual exemptions" even though participants could "request a unique preference" and receive different treatment. 154 F.4th at 768. But there, like here, those with a unique preference nonetheless "must still comply with the nondiscrimination provision." *Id.* Even though there was some individual consideration by requesting a preference, that did not mean there was an individual exemption because the nondiscrimination requirement always applied. *Id.* Here, Plaintiffs have no proof of any exemptions from Jeffco's policy of assigning students based on their gender identity consistently asserted at school. And if the Court has any doubts about this aspect of the policy, the proper course is to remand for consideration of the extensive factual record developed on this issue during discovery.

### 2.   Jeffco's policy survives rational basis review.

Because Jeffco's policy is both neutral and generally applicable, it "need not be justified by a compelling governmental interest even if [it] has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye*, 508 U.S. at 531. It need only be rationally related to a legitimate governmental interest. *Grace United*

*Methodist Church*, 451 F.3d at 649. Plaintiffs bear the burden "to negat[e] every conceivable basis which might support" the policy. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (quotation omitted).

Jeffco's policy is rationally related to a legitimate governmental interest. Plaintiffs do not contend otherwise. The explicit purpose of the policy is to foster an educational environment where all students are safe and included so that they can learn. *See, e.g.*, *Parents for Privacy v. Barr*, 949 F.3d 1210, 1238 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 894 (2020) (finding a "legitimate purpose of protecting student safety and well-being, and eliminating discrimination on the basis of sex and transgender status"); *Mead v. Rockford Pub. Sch. Dist.*, 800 F. Supp. 3d 836, 847 (W.D. Mich. 2025) (finding a "legitimate purpose of promoting a safe and supportive learning environment for LGBTQ students"). And the policy is rationally related to that interest. It ensures transgender students do not share overnight rooms with students of a different gender identity and keeps confidential students' private information, like their transgender status. *See Parents for Privacy*, 949 F.3d at 1238 (finding the school district's policy of allowing transgender students to use bathrooms and locker rooms that match their gender identity was rationally to its legitimate purpose).

Because Jeffco's policy is a neutral policy of general applicability that is rationally related to a legitimate government interest, it "does not violate traditional free-exercise principles." *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 698 (10th Cir. 1998).

26

### 3.    Any burden imposed by Jeffco's policy is not of the same character as those in *Mahmoud* and *Yoder*.

The "general rule that governments may burden religious exercise pursuant to neutral and generally applicable laws" does not apply in a narrow circumstance, one the Supreme Court has found in just two cases. *Mahmoud*, 606 U.S. at 564-65; *Yoder*, 406 U.S. at 218. The general rule does not apply only when a policy "'substantially interfere[s] with the religious development' of the parents' children" and "pose[s] 'a very real threat of undermining' the religious beliefs and practices the parents wish to instill in their children." *Mahmoud*, 606 U.S. at 565 (quoting *Yoder*, 406 U.S. at 218). In that limited circumstance, and only that limited circumstance, when the burden is "of the exact same character" as in *Yoder* and *Mahmoud*, strict scrutiny applies. *Id. See Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 23-3740, 2025 WL 2453836, at *6 (6th Cir. Aug. 26, 2025) (the *Mahmoud* exception did not apply to a Free Exercise challenge to a school district's policy allowing transgender students access to communal bathrooms in accordance with their gender identity).

The question of whether this exception applies—whether a policy substantially interferes with the religious development of a child—is "always fact-intensive." *Mahmoud*, 606 U.S. at 550. It depends on "the specific religious beliefs and practices asserted" and "the specific nature of the educational requirement or curricular feature at issue." *Id.* It considers the children's age and "the specific context in which the instruction or materials at issue are presented." *Id.*

27

In *Mahmoud*, the Supreme Court conducted this fact-intensive inquiry about the Montgomery County Board of Education's use of certain LGBTQ+-inclusive books in elementary schools. *Id.* at 550-55. The Supreme Court held that the way the Board used the books substantially interfered with the religious development of the plaintiffs' children and imposed "the kind of burden on religious exercise that *Yoder* found unacceptable." *Id.* at 550. Four features of the Board's approach led to the Supreme Court's conclusion, none of which apply here. First, the Board did not give parents notice of when the books would be used. *Id.* at 530, 550. Second, attendance during instruction about the books was mandatory; the Board did not allow families to opt out of instruction when the books were used. *Id.* Third, the books were "unmistakably normative;" "[t]hey are clearly designed to present certain values and beliefs as things to be celebrated and certain contrary values and beliefs as things to be rejected." *Id.* at 550-54. And fourth, the books were used with very young students, "children who are generally between 5 and 11 years old." *Id.* at 533. Only because of those four factors did the Supreme Court subject the Board's curricular approach to strict scrutiny and then invalidate it. *See Bethel*, 2025 WL 2453836, at *6 (describing *Mahmoud*).

The exception recognized in *Mahmoud* does not apply here. Jeffco's policy does not impose a burden "of the same character as that imposed in *Yoder*" and later in *Mahmoud. See Mahmoud*, 606 U.S. at 564. Jeffco's policy differs from the policy at issue in *Mahmoud* in important ways. First, unlike in *Mahmoud*, Jeffco notifies all families of its policies, including the challenged policy, on public websites and requires every parent

to review them every year. *Supra* § I.A. Second, unlike in *Mahmoud*, attendance on Jeffco's overnight trips is never mandatory nor is instruction during those trips part of Jeffco's required curriculum. Jeffco allows accommodations, including not attending, selecting one's roommates, or participating without spending the night, for any reason. *Supra* §§ I.B, I.D, I.E. Third, unlike in *Mahmoud*, Jeffco's policy is not normative; it does not "present certain values and beliefs as things to be celebrated and certain contrary values and beliefs as things to be rejected." *Mahmoud*, 606 U.S. at 550. There is no instruction or teaching involved at all. And fourth, unlike in *Mahmoud*, Jeffco's policy mostly affects older students in grades six through twelve. Application of the Supreme Court's "fact-intensive" analytical framework demonstrates why *Mahmoud* does not come close to reaching Jeffco's policy. *Mahmoud* does not control this case. *See Bethel*, 2025 WL 2453836, at *7 (the *Mahmoud* exception did not apply to a free exercise challenge to a school district's bathroom policy because the bathroom policy "was neither compulsory nor instructional"); *Mead*, 800 F. Supp. 3d at 845 (the *Mahmoud* exception did not apply to a free exercise challenge to a school district's policy on using students' chosen pronouns and names because the policy and practice "does not relate to attendance, does not compel action by the student or parents, and does not involve instruction or school curriculum").

Plaintiffs' attempts to equate Jeffco's policy with the *Mahmoud* policy ignore these factors and misstate the record. *See* Appellants Br. at 33-35. Jeffco's policy is not "presented in a manner that is 'hostile' to religious viewpoints and designed to impose

upon students a 'pressure to conform.'" *Mahmoud*, 606 U.S. at 550 (quoting *Yoder*, 406 U.S. at 211). Unlike in *Mahmoud* and contrary to Plaintiffs' characterization that students feel pressure to conform because of Jeffco's "refusal" to accommodate them, Appellants Br. at 34, Jeffco grants any student an accommodation for any reason. *Supra* § I.B. For example, when the Brinkmans requested that A.B. attend Outdoor Lab as a day student and not stay overnight, Jeffco accommodated them. *Supra* § I.F. *See Mahmoud*, 606 U.S. at 588-89 (J. Thomas, concurring) (the Board's rejection of parents' requests to opt children out of the book curriculum showed it required ideological conformity). To the extent that A.B. felt any pressure about her participation in Outdoor Lab, it was not because of Jeffco's policy.

Nor does Jeffco's policy condition students' participation in overnight activities on their "willingness to accept a burden on their religious exercise." *Mahmoud*, 606 U.S. at 561. Plaintiffs contend that Jeffco's policy "leaves religious students only two choices: conform or forfeit participation in overnight exercises." Appellants Br. at 34. Not so. Jeffco gives students many options. If they are uncomfortable rooming with students of the same gender identity, they can select their roommates or opt for a more private room on most trips. These options were available to the Wailes family when G.W. and B.W. traveled to the East Coast and will be available to M.P. if she takes any future basketball trips. *Supra* §§ I.H, I.G. While options are more limited for Outdoor Lab because of the facilities' bunkhouse design, students can attend as day students, as A.B. did, or opt for an alternative curriculum delivered at their home school. *Supra* § I.D.

30

This is a far cry from *Mahmoud,* where the Supreme Court rejected the suggestion that families unhappy about the books could send their children to private school or homeschool them as an unacceptable condition. 606 U.S. at 560-61.

Any burden imposed by Jeffco's policy is of a different character than the burdens in *Mahmoud* and *Yoder.* The exception to the general rule recognized in those cases does not apply here and Jeffco's otherwise neutral and generally applicable policy need not survive strict scrutiny.

### 4.    Even if strict scrutiny applies, Jeffco's policy survives that standard.

Even if strict scrutiny applies—and it does not—Jeffco's policy survives. To satisfy strict scrutiny, the government must show that its policy serves a compelling interest and is narrowly tailored to achieve that interest. *Mahmoud*, 606 U.S. at 565 (quoting *Fulton*, 593 U.S. at 541).

Jeffco's policy serves two compelling interests. First, Jeffco has a compelling interest in fostering an educational environment conducive to *all* students' learning. The Supreme Court affirmed in *Mahmoud* that there is "no[] doubt" that "schools have a 'compelling interest in having an undisrupted school session conducive to the students' learning.'" 606 U.S. at 566 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 119 (1972)). *See also Yoder*, 406 U.S. at 213 ("There is no doubt as to the power of a State, having a high responsibility for education of its citizens, to impose reasonable regulations for the control and duration of basic education"); *Martinez v. Mafchir*, 35 F.3d 1486, 1490 (10th

31

Cir. 1994) ("the state itself has a compelling interest in the health, education and welfare of children"). All students' education is enhanced by an inclusive environment. *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 529 (3d Cir. 2018) (a transgender-inclusive policy "serve[s] an important educational function for both transgender and cisgender students"). Plaintiffs' argument that Jeffco's application of the policy undermines this interest is wrong. Appellants Br. at 40-41. The accommodations Jeffco offers to any student who wants more privacy still allow that student to fully participate in Jeffco's educational programming. For most overnight trips, selecting a private room or picking their roommates will not change the student's experience. At Outdoor Lab, attending as a day student still allows the student to attend all scheduled programming.

Second, Jeffco has a compelling interest in reducing discrimination against transgender students. "[T]ransgender students face extraordinary social, psychological, and medical risks and the School District clearly ha[s] a compelling state interest in shielding them from discrimination." *Boyertown Area Sch. Dist.*, 897 F.3d at 528. Protecting vulnerable transgender students is part of the school district's larger compelling interest in protecting the physical and psychological well-being of minors. The Supreme Court has recognized that compelling interest several times. *E.g.*, *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989) (there is a compelling interest in "protecting the physical and psychological well-being of minors"); *New York v. Ferber*, 458 U.S. 747, 756-57 (1982) (same). Plaintiffs do not contest that Jeffco has a compelling interest in protecting all students, including transgender students. Instead, they argue

32

that applying Jeffco's policy to Plaintiffs does not further this interest. But Plaintiffs' argument that the policy they seek instead—allowing parents to choose whether their children will be roomed by gender identity or sex assigned at birth—would not harm transgender students is wrong. Appellants Br. at 41. It would result in transgender students segregated in certain rooms organized by gender identity, separate from rooms organized by sex assigned at birth. If few parents chose assignments according to students' gender identity, transgender students would be even more ostracized and would be more likely to be outed as transgender. And it would require Jeffco in many cases to inquire into the intimate and private matter of its students' sex assigned at birth, as this is not necessarily reflected on students' routine enrollment documentation.

Jeffco's policy is narrowly tailored to achieve those interests. To the extent Jeffco's policy burdens religion as Plaintiffs claim, Jeffco cannot achieve its interests in a manner that does not do so. *See Fulton*, 593 U.S. at 541. Take Plaintiffs' proposed approach: allowing all parents to choose for their students rooming assignments based on gender identity or sex assigned at birth. Appellants Br. at 41. This would be "easy," Plaintiffs argue, and "cause no harm to anyone." *Id.* Wrong—for two reasons. First, Jeffco does not know every student's sex assigned at birth. *Supra* § I.C. And so it cannot sort students based on their sex assigned at birth absent an extensive and intrusive investigation into deeply private information of its students. Second, this approach would not serve Jeffco's compelling interest in protecting all students, including transgender students, from discrimination. Transgender students would be cabined in

33

rooms based on gender identity, separate from rooms based on sex assigned at birth. They would know that at least some peers, those who chose rooms based on sex assigned at birth, do not want to share overnight spaces with them. And it would be more likely that transgender students would be identified as such. If few students were in rooms based on gender identity, transgender students would be highly concentrated in those rooms. That would "invite[] more scrutiny and attention from [their] peers." *Boyertown Area Sch. Dist.*, 897 F.3d at 530 (quoting *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017), *abrogated on other grounds as recognized in Kluge v. Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792, 801 (7th Cir. 2025)).

Because Jeffco's policy survives any level of constitutional scrutiny, Plaintiffs fail to state a claim under the Free Exercise Clause.

### B.    Plaintiffs fail to state substantive due process claims.

Jeffco's policy does not violate Plaintiffs' fundamental substantive due process rights, and it survives any level of constitutional scrutiny. Because Plaintiffs fail to state a claim for relief under the Fourteenth Amendment, the District Court correctly dismissed Plaintiffs' first and third claims.

This Court conducts a three-part analysis of substantive due process claims. First, the Court determines whether a fundamental right is at stake "because the Supreme Court or the Tenth Circuit has already determined that it exists or because the right claimed to have been infringed by the government is one that is objectively among those 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of

ordered liberty' such that it is 'fundamental.'" *Abdi v. Wray*, 942 F.3d 1019, 1028 (10th Cir. 2019) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)); *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024). This step requires a "careful description of the asserted right, for 'the doctrine of judicial self-restraint requires [a court] to exercise the utmost care whenever [it is] asked to break new ground in this field.'" *Reno v. Flores*, 507 U.S. 292, 302 (1993) (quoting *Collins v. Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)); *see Muñoz*, 602 U.S. at 910. Second, the court determines whether the claimed right has been infringed. *Abdi*, 942 F.3d at 1028. And third, the Court applies strict scrutiny review if the right is fundamental and rational basis review if not. *Id.*

### 1. Jeffco's policy does not infringe the limited parental right to direct a child's upbringing and education.

In their first claim, Plaintiffs assert that Jeffco's policy interferes with their parental right to direct their children's upbringing, education, and care. App. Vol. 2 at 399-406. It does no such thing.

### a. Parents' fundamental right does not include the authority Plaintiffs claim.

Parents have a fundamental right "to direct the education and upbringing of [their] children." *Glucksberg*, 521 U.S. at 720. "But the scope of that right has limits." *Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 933 (10th Cir. 2025). This Court has explained that the fundamental "parental right includes the right to 'control the education' of their child, which encompasses the right to remove their child from public school." *Id.* (quoting *Meyer v. Nebraska*, 262 U.S. 390, 401 (1923)).

A "careful description" of the asserted right is required at the first step of the substantive due process analysis. *Muñoz*, 602 U.S. at 910. Plaintiffs invoke their parental right in directing the upbringing of, education, and care of their children. Appellants Br. at 44. Jeffco does not deny that Plaintiffs have that fundamental right. But Plaintiffs "claim[ ] something distinct," *see Muñoz*, 602 U.S. at 910: a right to decide what criteria should be used to decide who can share a hotel room, cabin, or shower facilities on school trips, Appellants Br. at 47; *see also* App. Vol. 2. at 400-01.

There is no fundamental parental right to decide "who shares a bedroom or shower facility with [one's] child" on a school trip. *See* Appellants Br. at 48. Plaintiffs make broad platitudes about parental authority but do not—because they cannot—cite evidence suggesting a history or tradition of that specific parental authority. For example, Plaintiffs rely on *Mahmoud* for the contention that a school policy cannot impose "subtle forms of interference with the religious upbringing of children." *Id.* at 46. But that quote, cited without context, does not support Plaintiffs' claim "when, in fact, [in *Mahmoud*] the Supreme Court wrote specifically about the free exercise clause, not any and all claimed parental rights." *Doe v. Franklin Square Union Free Sch. Dist.*, No. 2:21-cv-05012, 2025 WL 2733457, at *2 (E.D.N.Y. Sept. 25, 2025).

The fundamental parental right protected by the Due Process Clause is far narrower than Plaintiffs assert. The Supreme Court, this Court, and other courts have long recognized its limited scope. The Supreme Court, for example, has held that parents don't have a right to "replace state educational requirements with their own

idiosyncratic views of what knowledge a child needs to be a productive and happy member of society." *Runyon v. McCrary*, 427 U.S. 160, 177 (1976) (quotation omitted). This Court has explained that a parent does not have "a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject." *Swanson*, 135 F.3d at 699 (collecting cases). More recently, this Court noted that "the scope of [a parent's fundamental right] has limits" when it considered plaintiffs' "broad descriptions of parental rights" in support of a substantive due process claim. *Lee*, 135 F.4th at 933-34. Other circuits also recognize that parents "do not have a fundamental right [ ] to direct *how* a public school teaches their child":

> Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities at the school, or ... a dress code, these issues of public education are generally committed to the control of state and local authorities.

*Bethel*, 2025 WL 2453836, at *9 (quotation omitted).

Plaintiffs do not have a fundamental right to decide who their child will or will not share a room with on an overnight school trip. *See Parents for Privacy*, 949 F.3d at 1229-32 (affirming dismissal of substantive due process claim related to bathroom policy because parents "lack constitutionally protected rights to direct school administration" on such issues). And so they do not have a "colorable claim of infringement on the constitutional right to direct a child's education." *Swanson*, 135 F.3d at 700. Plaintiffs' "legal theory fails." *Parents for Privacy*, 949 F.3d at 1233.

### b.    Jeffco's policy does not infringe on any fundamental parental right.

At the second step of the substantive due process analysis, Plaintiffs do not show that Jeffco infringes on a fundamental parental right. Jeffco does not, for example, interfere with Plaintiffs' right to send their children to private school. *See Swanson*, 135 F.3d at 699. And Jeffco's policy and practice of extensive accommodation for whatever reason further supports the conclusion that there is no infringement of any fundamental right.

At the third step then, the Court need only "apply rational basis review." *Abdi*, 942 F.3d at 1028. Jeffco's policy easily survives rational basis review, *supra* § II.A.2, and Plaintiffs do not argue otherwise.

Because Plaintiffs have not identified an actual fundamental parental right that would afford them relief, their parental right claim fails.

### 2.    Jeffco's policy does not infringe on students' right to bodily privacy.

In their third claim, Plaintiffs assert that Jeffco's policy interferes with their children's right to bodily privacy. App. Vol. 2 at 406-10. Their claim does not stand up to close analysis.

### a.    Bodily privacy rights do not include the right Plaintiffs claim.

There is, of course, a constitutional right to privacy. *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982). But that right is not absolute. It is limited in schools, "where

38

the State is responsible for maintaining discipline, health, and safety." *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 830 (2002).

The first step of the substantive due process analysis requires a careful description of the asserted right. *Muñoz*, 602 U.S. at 910. Plaintiffs claim "a fundamental right to bodily privacy." Appellants Br. at 49. They assert "[t]heir right is to prevent intimate exposure to or by a person of the opposite sex." *Id.* at 50; *see also* App. Vol. 2 at 411.

There is no fundamental right that protects students from exposure of "intimate activities" to or by people of the opposite sex in school settings. *See* App. Vol. 2 at 411. Plaintiffs do not cite a history or tradition of that specific right. They cannot do so because "no court has ever" "recognize[d] such an expansive constitutional right to privacy." *Boyertown Area Sch. Dist.*, 897 F.3d at 531 (rejecting plaintiffs' claim that their privacy rights were violated when they were made to share bathrooms and locker rooms with transgender students). Instead, courts have held that "students within the school environment have a lesser expectation of privacy than members of the population generally." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657-58 (1995) (quotation omitted). That's especially true of school facilities like locker rooms, which "are not notable for the privacy they afford." *Id.* at 657.

Plaintiffs argue that courts have recognized a "constitutionally protected privacy interest" in one's "partially clothed body." Appellants Br. at 49-50. But they rely on cases discussing far more intrusive invasions of privacy than what is at issue here. For

example, in *Cumbey v. Meachum*, a male inmate took issue with female prison guards watching him dress and undress and use the toilet and shower. Appellants Br. at 49; *Cumbey*, 684 F.2d at 713. In *Doe v. Luzerne County*, male officers shared videos and pictures of a female deputy sheriff when she was completely undressed. Appellants Br. at 50; *Doe v. Luzerne Cnty.*, 660 F.3d 169, 171-73, 175-78 (3rd Cir. 2011). These cases do not support Plaintiffs' argument that the Constitution affords a broad privacy right protecting against "intimate exposure" to or by a person of the opposite sex. These cases concerned more extreme privacy invasions than alleged here; did not take place in a school setting; and do not control here. *See Parents for Privacy*, 949 F.3d at 1224-25 (rejecting plaintiffs' reliance on *Luzerne County* and other cases in support of a claimed privacy interest in one's partially clothed body).

Other circuit courts that have considered privacy claims based on transgender students' access to locker rooms or bathrooms—similar to hotel rooms and bunkhouses—have rejected them. In *Boyertown Area School District*, for example, the plaintiffs challenged the school district's policy of allowing transgender students to use bathrooms and locker rooms consistent with their gender identities and asserted a violation of bodily privacy rights. 897 F.3d at 521. The Third Circuit held that the plaintiffs were unlikely to succeed on the merits of that claim in part because they claimed "a very broad right of personal privacy in a space that is, by definition and common usage, just not that private." *Id.* at 531. "School locker rooms and restrooms," the Third Circuit explained, "are spaces where it is not only common to encounter

40

others in various stages of undress, it is expected." *Id.* The Ninth Circuit reached a similar conclusion in *Parents for Privacy*, 949 F.3d at 1221-26.

Plaintiffs do not have a fundamental right to "prevent intimate exposure to or by a person of the opposite sex" in a school setting. Appellants Br. at 50. And so they have not stated a claim in their third claim. *See Parents for Privacy*, 949 F.3d at 1226 (affirming the district court's dismissal of plaintiffs' privacy rights claim).

### b. Jeffco's policy does not infringe on Plaintiffs' bodily privacy right.

Plaintiffs do not show that Jeffco infringes on a fundamental privacy right at the second step of the substantive due process analysis. Two points bear mentioning. First, Plaintiffs imply that Jeffco forces students to "disrobe" and "perform personal bodily functions" in front of other students. Appellants Br. at 51-52; App. Vol. 2 at 411. Not so. Jeffco does not require students to undress or do other "intimate" activities in front of each other. The places where students stay overnight—hotel rooms on most trips, bunkhouses at Outdoor Lab—allow students to undress and perform personal hygiene in privacy. And second, if a family is not comfortable with the hotel rooms or bunkhouses, Jeffco offers as an accommodation a more private hotel room or selection of their roommates or, at Outdoor Lab, participation as a day student. No student is forced to give up their bodily privacy.

At the third step, rational basis review applies because Jeffco does not infringe on a fundamental privacy right. *Abdi*, 942 F.3d at 1028. Jeffco's policy passes rational basis review, *supra* § II.A.2; Plaintiffs don't argue otherwise.

Plaintiffs have not sufficiently invoked a fundamental privacy right threatened by Jeffco's policy. Their bodily privacy claim fails.

### III.     The District Court properly denied Plaintiffs' Renewed Motion for Preliminary Injunction.

After their first request for a preliminary injunction was denied, *see* App. Vol. 2 at 336-53, Plaintiffs again sought a nearly identical preliminary injunction to stop Jeffco "from assigning Student Plaintiffs to share bedrooms and shower facilities with students of the opposite sex," App. Vol. 3 at 574. The District Court did not abuse its discretion by denying Plaintiffs' second motion for preliminary injunction.

A preliminary injunction is "an extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To prevail, the movant must show: (1) a likelihood of success on the merits; (2) a likely threat of irreparable harm; (3) the alleged harm to the plaintiffs outweighs any harm to the defendant; and (4) that an injunction is in the public interest. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir. 2013). The third and fourth factors merge where, as here, "the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors do not create a balancing test. Rather, "[a]n injunction can issue only if each factor is established." *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1277-78 (10th Cir. 2022).

Plaintiffs' burden was even heavier. They sought an injunction that would alter the status quo and had to therefore make a "strong showing" on the likelihood-of-success-on-the-merits and balance-of-harms factors. *Free the Nipple-Fort Collins*, 916 F.3d at 797. Here, the District Court correctly held that Plaintiffs failed to make a strong showing that they were likely to prevail on the merits.

### A.    Plaintiffs failed to show they were likely to succeed on the merits of their claims.

For the same reasons that Plaintiffs fail to state a claim for any of their four claims, *supra* § II, Plaintiffs did not show that they were likely to succeed on the merits. This factor weighs in Jeffco's favor.

### B.    The remaining factors weigh against preliminarily enjoining Jeffco's policy.

Nor did Plaintiffs satisfy the remaining factors for preliminary injunction.

Plaintiffs did not show irreparable harm because their claimed injuries were theoretical, any alleged injury was not to a constitutional right, *supra* § II, and Plaintiffs could take advantage of Jeffco's offered accommodations to avoid the injury, *supra* § I.B. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) ("To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical'"). This factor weighs in Jeffco's favor.

Plaintiffs also did not make a strong showing that the balance of harms tips in their favor and that the preliminary injunction is not adverse to the public interest. Plaintiffs' alleged harm was uncertain and could be avoided by using the

accommodations Jeffco offers. *Supra* § I.B. The alleged harm also was not to a constitutionally protected right. *Supra* § II. On the other hand, the harm to the public interest—especially to the transgender students in Jeffco—from an injunction would be significant. These merged factors also weigh in Jeffco's favor.

Because Plaintiffs did not establish each factor, the District Court correctly denied their renewed motion for a preliminary injunction.

## CONCLUSION

This Court should affirm the District Court's dismissal of the case and denial of Plaintiffs' Renewed Motion for Preliminary Injunction. The Perlmans do not have standing because they do not allege an injury in fact. Jeffco's policy is neutral and generally applicable, and it does not implicate substantive due process rights. Even if the Court finds that a constitutional right is at issue, Jeffco's policy survives every level of scrutiny. And so Plaintiffs failed to state a claim for relief. For the same reasons, Plaintiffs failed to show that their claims were likely to succeed on the merits or that any other requirement for a preliminary injunction was satisfied.

In the unlikely event the Court is not persuaded that dismissal was appropriate based on the current record, the proper remedy is not, as Plaintiffs insist, to generally enjoin Jeffco from operating under its longstanding policy. Instead, the Court should return the case to the District Court for further proceedings, including summary judgment on the fully developed record that is not presently before this Court.

44

## STATEMENT REGARDING ORAL ARGUMENT

Jeffco believes that oral argument is appropriate and will assist the Court in reaching a decision.

Dated: January 9, 2026

Respectfully submitted,

/s/ *Isabel Broer*

Eric Olson
Isabel Broer
Bianca Miyata
Olson Grimsley Kawanabe Hinchcliff &
Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
(303) 535-9151
eolson@olsongrimsley.com
ibroer@olsongrimsley.com
bmiyata@olsongrimsley.com

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because it contains 11,325 words, excluding parts of the brief exempted by Fed. R. App. P. 32().

This brief complies with the typeface requirements of Fed. R. App. p. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Garamond.

Dated: January 9, 2026                    */s/ Isabel Broer*
                                          *Counsel for Appellees*

46

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1.      all required privacy redactions have been made per 10th Cir. R. 25.5;

2.      if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

3.      the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program Sentinel One, Mac version 24.3.2, and according to the program are free of viruses.

Dated: January 9, 2026                          */s/ Isabel Broer*
                                                 *Counsel for Appellees*

# CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I electronically filed the foregoing brief with the Clerk of the Court of the United States Court of Appeals for the Tenth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

Dated: January 9, 2026                    */s/ Isabel Broer*
                                          *Counsel for Appellees*