No. 25-1341

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

JOSEPH and SERENA WAILES, et al.,

*Plaintiffs-Appellants,*

v.

JEFFERSON COUNTY PUBLIC SCHOOLS and JEFFERSON COUNTY PUBLIC SCHOOLS BOARD OF EDUCATION,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Colorado
Case No. 1:24-cv-02439-RMR-NRN
Honorable Regina M. Rodriguez

## REPLY BRIEF OF APPELLANTS
## Oral Argument Requested

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

Katherine L. Anderson
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
kanderson@ADFlegal.org

Noel W. Sterett
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
nsterett@ADFlegal.org

David A. Cortman
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road N.E.
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

*Counsel for Appellants*

# TABLE OF CONTENTS

Table of Authorities.................................................................. iii

Introduction............................................................................1

Clarification of Facts ..............................................................2

Argument................................................................................6

I.    The Perlmans have standing because they have a "personal
      stake" in their daughter's sleeping arrangements. .........................7

II.   Rooming student plaintiffs with the opposite sex violates
      plaintiffs' free-exercise rights. ........................................8

      A.    Jeffco's policy imposes *Mahmoud*-type burdens that
            trigger strict scrutiny.............................................9

            1.    The complaint alleges Jeffco substantially
                  interferes with the religious upbringing of
                  plaintiffs' children. .......................................10

            2.    Jeffco's response confirms plaintiffs' entitlement
                  to an injunction under *Mahmoud*..............................12

      B.    Jeffco's policy is not generally applicable, so it triggers
            strict scrutiny under *Fulton*....................................14

      C.    Jeffco's policy is not neutral....................................16

      D.    Jeffco cannot satisfy strict scrutiny.............................19

            1.    Jeffco's policy is not narrowly tailored. ...................19

            2.    Jeffco also fails to identify a compelling interest
                  as applied to plaintiffs. ...................................21

III.  Jeffco's policy violates parent plaintiffs' parental rights. ............22

IV.   Jeffco's policy violates student plaintiffs' right to privacy. ..........25

i

A.    Plaintiffs plausibly allege violations of bodily privacy.........25

B.    Jeffco cannot justify its privacy infringements. ...................26

V.    Plaintiffs satisfy all the preliminary-injunction factors...............27

Conclusion ........................................................................29

Certificate of Compliance........................................................31

Certificate of Digital Submission.............................................32

Certificate of Service .............................................................33

# TABLE OF AUTHORITIES

## **Cases**

*Arnold v. Board of Education of Escambia County*,
 880 F.2d 305 (11th Cir. 1989) ........................................................24

*Awad v. Ziriax*,
 670 F.3d 1111 (10th Cir. 2012) ....................................................29

*Bost v. Illinois State Board of Elections*,
 2026 WL 96707 (U.S. Jan. 14, 2026)...........................................7, 8

*C.N. v. Ridgewood Board of Education*,
 430 F.3d 159 (3d Cir. 2005)...........................................................23

*Cuervo v. Sorenson*,
 112 F.4th 1307 (10th Cir. 2024)......................................................7

*Cumbey v. Meachum*,
 684 F.2d 712 (10th Cir. 1982) ......................................................25

*Doe No. 1 v. Bethel Local School District Board of Education*,
 2025 WL 2453836 (6th Cir. Aug. 26, 2025) ............................11, 12

*Doe v. Boyertown Area School District*,
 897 F.3d 518 (3d Cir. 2018)...........................................................27

*Doe v. Luzerne County*,
 660 F.3d 169 (3d Cir. 2011).............................................................27

*Finch v. Peterson*,
 622 F.3d 725 (7th Cir. 2010) ........................................................19

*Fulton v. City of Philadelphia*,
 593 U.S. 522 (2021) .................................9, 14, 15, 16, 19, 20, 21, 22

*Fuqua v. Santa Fe County Sheriff's Office*,
 157 F.4th 1288 (10th Cir. 2025)......................................................6

*Gruenke v. Seip*,
    225 F.3d 290 (3d Cir. 2000) ........................................................... 23

*Heideman v. South Salt Lake City*,
    348 F.3d 1182 (10th Cir. 2003) ..................................................... 28

*Mahmoud v. Taylor*,
    606 U.S. 522 (2025) ................................. 1, 10, 11, 12, 18, 21, 22, 24

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
    584 U.S. 617 (2018) ............................................................ 9, 17, 18

*Miller v. McDonald*,
    2025 WL 3506969 (U.S. Dec. 8, 2025) ........................................... 12

*Parents for Privacy v. Barr*,
    949 F.3d 1210 (9th Cir. 2020) ....................................................... 27

*Runyon v. McCrary*,
    427 U.S. 160 (1976) ....................................................................... 24

*St. Mary Catholic Parish v. Roy*,
    154 F.4th 752 (10th Cir. 2025) ...................................................... 19

*Swanson ex rel. Swanson v. Guthrie Independent School District
    No. I-L*,
    135 F.3d 694 (10th Cir. 1998) ....................................................... 24

*Tandon v. Newsom*,
    593 U.S. 61 (2021) .................................................................... 9, 16

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017) ................................................................... 9, 10

*Troxel v. Granville*,
    530 U.S. 57 (2000) ................................................................. 22, 23

*United States v. Skrmetti*,
    605 U.S. 495 (2025) ....................................................................... 16

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972) ............................................................ 9, 12, 23

## **Other Authorities**

*Custodial*, Merriam-Webster's Dictionary (11th ed. 2025) ....................23

## INTRODUCTION

Parent plaintiffs believe their children should not share sleeping arrangements with the opposite sex. And Jeffco promises parents it rooms boys and girls separately on overnight trips. Yet, under its official policy, Jeffco put a male in a hotel room with the Waileses' daughter and a female in the "Male Bunk House" with the Rollers' son—without parental notice or consent. 2.App.371–73; 2.App.361–66.

By rooming a male in a girls' room (or vice versa) based on gender identity, Jeffco presents as normative the controverted view that a male who identifies as a girl is in fact a girl, so girls must treat him like any other female in their room. In so doing, Jeffco's policy "undermin[es] the religious beliefs and practices [parent plaintiffs] wish to instill in their children." *Mahmoud v. Taylor*, 606 U.S. 522, 565 (2025) (citation modified). Yet the district court ignored *Mahmoud*. That requires reversal.

 Unable to show how the pleaded facts fail to state a claim, Jeffco disregards the 12(b)(6) standard and asks this Court to affirm based on the "entire record." Appellees' Br. 3 n.1. But the entire record—which this Court looks at only in its preliminary-injunction analysis—shows plaintiffs' likely merits success and the irreparable harm caused by Jeffco's policy. Accordingly, this Court should reverse the dismissal of plaintiffs' claims and remand with instructions to preliminarily enjoin Jeffco from rooming student plaintiffs with the opposite sex.

## CLARIFICATION OF FACTS

Jeffco muddies this appeal with assertions belied by the record:

1.      Jeffco says it accommodates all students, for any reason, regardless of religion, and that it offered reasonable accommodations to plaintiffs. Appellees' Br. 2, 5, 8, 20, 32. Not so. To begin, Jeffco's policy does not say it accommodates *all* students, only "students *who are transgender*." 3.App.429 (emphasis added). The policy once provided a "reasonable accommodation" for "*[a]ny student* who is transgender *or not*, who has a need or desire for increased privacy, regardless of the underlying reason." 1.App.141 (emphasis added). But Jeffco removed that language after the Waileses asked for accommodations. 1.App.113.

Jeffco has denied plaintiffs' repeated requests or offered only penalties—not accommodations. Mrs. Brinkman testified that "*eight times*" Jeffco denied her request for an accommodation "that would allow her [daughter] full participation in Outdoor Lab." 3.App.593 (emphasis added). But Jeffco's "only option was for [her] daughter to attend as a day student"—which "penalize[d]" her daughter and forced Mrs. Brinkman to take off work, rent a home near Outdoor Lab, and incur other expenses. 3.App.594–96. Jeffco denied the Perlmans' similar request for Outdoor Lab and received the same treatment. 3.App.614.

The Rollers were never given a clear response from Jeffco when they asked for accommodations. 2.App.388. And for the Waileses, Principal Lucas testified that they could pay extra for a low-occupancy

room should they object to opposite-sex rooming during their D.C. trip—though he promises only to "coordinate" with Jeffco's vendor and does not guarantee that the vendor can make it happen, even with the extra fee. 2.App.242. Jeffco calls these accommodations; they are penalties.

2.     Jeffco also says that it does not allow transgender students to choose whether to room in a boys or girls room. Appellees' Br. 5. But Jeffco's policy rooms transgender students with their "gender identity" only in "most cases." 3.App.429. And Jeffco allowed a "nonbinary" female student to choose to room in a boys' cabin with the Rollers' son rather than have her room in the girls' cabin or a "nonbinary" cabin (which doesn't exist). 2.App.373. Plus, as alleged in the complaint and confirmed by Principal Shapiro, students (through their parents) can "choose" their preferred "gender" in Infinite Campus right before a trip by submitting a form, and that changes how Jeffco rooms them. 2.App.381–82; 3.App.651 n.1. The verified allegations also show that students change their gender identity. 2.App.374. Jeffco does not refute any of this. Rather, it cites two times when it roomed students by their gender identity—consistent with plaintiffs' allegations and Jeffco's policy. Appellees' Br. 5 (citing 3.App.647–54).

3.     Jeffco also says it cannot track students' biological sex. Appellees' Br. 6, 33. But it can—and does. The complaint alleges that Jeffco requires its schools to keep a "permanent student record that includes a student's legal name and legal gender." 2.App.383. "Legal

gender" is the term Jeffco uses to describe the sex identified on a
student's birth certificate. 2.App.382. The complaint further alleges that
Jeffco "requires all parents to submit a birth certificate." 2.App.382.
Jeffco cites no contradictory evidence; instead, it cites its own *brief* as
"evidence" that it accepts other forms of identity. Appellees' Br. 6 (citing
2.App.153).

 Nor does Jeffco cite any evidence that any Jeffco student has ever
changed their birth certificate's sex designation or submitted other
identity forms that do not display the student's biological sex. Principal
Shapiro testified it is his understanding "that a student's 'legal gender'
is determined by official documents, like court records or birth
certificates." 3.App.651 n.1. So the record shows Jeffco can track
students' sex.

 4. Jeffco also says it notifies parents for all trips that it may
room students with opposite-sex students. Appellees' Br. 4, 28. It cites
the Transgender Students Policy. 3.App.427–29; 1.App.109. Jeffco
buries these policies online, 2.App.374, but sends home a consent form
for parental permission to give children things like Gatorade or cough
drops, 2.App.389.

 Buried online policies aside, the record shows that Jeffco *told*
parents and students something else. The Brinkmans recount a parents
meeting attended by "several hundred parents and students" where a
Jeffco employee answered "yes" when a parent asked whether "high

school counselors and interns would be roomed based on biological sex."
2.App.391. The presentation never revealed the Transgender Students
Policy or explain that rooming assignments would be based on gender
identity. 2.App.391.

D.W. testified that chaperones told her "the girls were on one floor
and all the boys were on another floor." 1.App.116. The trip leader told
Mrs. Wailes the same. 2.App.362. The Waileses "understood this to
mean that rooms would be assigned based on biological sex." 2.App.362.

Similarly, the "Rollers were told that sixth graders would be
staying in sex-separated cabins" at Outdoor Lab. 2.App.371; 1.App.123.
B.R. testified that he "was told that [he] would be staying in a cabin
with other boys in [his] grade" and that the "boys' cabin would also have
high school boys as the cabin counselors." 1.App.125. Mr. Perlman
testified that at an Outdoor Lab parents meeting, a Jeffco "employee
leading the parent's meeting" did not tell the parents their "child could
be sharing a cabin or shower facility with a student of the opposite sex,
a high school counselor of the opposite sex, or a post-graduate intern of
the opposite sex." 1.App.132. And the vendor who runs Jeffco's D.C.
trips told parents ahead of the Waileses' trip that "[s]tudents room in
quads with same-sex students." 3.App.450. Even the newer information
packets tell parents that rooming assignments are based on the "gender
identified on [the student's] passport" (i.e., sex). 2.App.246. Treating
this sex-based designation as the norm, the vendor will work to

accommodate students who "identify as a different gender" at "no additional cost." 2.App.246. Ultimately, Jeffco does not contend it notified the Waileses or the Rollers specifically that their child would be sleeping with or showering in front of the opposite-sex.

5.    Finally, Jeffco says that Outdoor Lab is optional. Appellees' Br. 4. But Jeffco's letter to parents says, "All 6th grade students enrolled in Jeffco Public Schools are expected to attend Outdoor Lab." 1.App.046. So when Jeffco told the Brinkmans and Perlmans that "day-student participation" was their only option if they did not want to risk their children rooming with the opposite sex, Jeffco penalized them by adding a substantial cost to a mandatory event—far from "optional."

## ARGUMENT

Plaintiffs request (1) reversal of the Rule 12(b)(6) dismissal, and (2) remand with instructions to preliminarily enjoin Jeffco from rooming student plaintiffs with the opposite sex. Jeffco confuses these separate requests by asking the Court to affirm the 12(b)(6) dismissal based on the "entire record." Appellees' Br. 3 n.1.[1] That's improper.

This Court rejects attempts to sneak summary-judgment evidence into Rule 12(b)(6) arguments. *E.g.*, *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1301 (10th Cir. 2025); *Cuervo v. Sorenson*, 112

---

[1] Contrary to Jeffco's representations, plaintiffs "take issue" with "looking at the entire record" under Rule 12(b)(6). They objected repeatedly below to "Jeffco's frequent invitation" to look beyond the complaint. 3.App.537 n.1; 3.App.538; 3.App.542; 3.App.548–49.

F.4th 1307, 1312 (10th Cir. 2024). Moreover, the "entire record" shows plaintiffs' likelihood of success and need for an injunction.

## I.    The Perlmans have standing because they have a "personal stake" in their daughter's sleeping arrangements.

Like the other plaintiff families, whose standing is uncontested, the Perlmans' verified allegations show they have a "personal stake" in their daughter's sleeping arrangements. *Bost v. Ill. State Bd. of Elections*, No. 24-568, 2026 WL 96707, at *3 (U.S. Jan. 14, 2026).

As pleaded, their daughter, M.P., "will be attending future Jeffco-sponsored trips," including "extracurricular activities that include travel" like "sports." 2.App.395. Under Jeffco's rules, it may assign her to share a bedroom or shower facilities with a boy—without notice or the Perlmans' consent, 2.App.397–99—which violates her and her family's religious beliefs and her privacy, 2.App.375. The Perlmans have "a personal stake in the rules that govern" her sleeping arrangements on trips. *Bost*, 2026 WL 96707, at *3.

Jeffco says the Perlmans lack standing because they did not specifically allege that M.P. will "play in any tournaments" or would "join the team on overnight travel." Appellees' Br. 17. But the complaint alleges that, along with the other families, the Perlmans "have children in the district who will be attending future Jeffco-sponsored trips" and "playing sports for Jeffco schools or participating in other extra-curricular activities that include travel." 2.App.395. It also verifies that

"M.P. plans to participate in basketball" and that "trips will begin to occur for her team." 2.App.396. Because Jeffco's policy applies to all such trips, that's enough to show standing.

In opposing plaintiffs' motion for preliminary injunction below, Jeffco similarly cast doubt on whether M.P. would play with the "girls varsity basketball team." *See* 2.App.237; Appellees' Br. 9. But she did, just as Mr. Perlman's declaration and Coach Neal—with whom Mr. Perlman had "spoken directly"—said she would. 2.App.332–33. And Jeffco does not contest her plan to continue playing varsity basketball.

Likewise, Jeffco relied on Principal Graham's statement that coaches "do their best to honor" roommate requests. Appellees' Br. 9 (citing 3.App.640). That's a pie-crust promise. And the evidence shows that Jeffco roomed the Waileses' daughter with a boy even though she requested specific female roommates. 2.App.363. For some trips, like Outdoor Lab—where many children sleep in large bunkhouses—room-mate requests do not solve the problem. 2.App.371. So Principal Graham's declaration does not change the policy or counter the Perlman's standing evidence. *Bost*, 2026 WL 96707, at *3.

## II. Rooming student plaintiffs with the opposite sex violates plaintiffs' free-exercise rights.

For the motion-to-dismiss analysis, this Court accepts as true that Jeffco's policy burdens plaintiffs' religious exercise. *See, e.g.*, 2.App.408; Fla. Am. Br. 2–6 (Rule 12(b)(6) standard favors plaintiffs' free-exercise

claim). And under the preliminary-injunction analysis, Jeffco does not contest it—thereby conceding sincerity and burden.

The only question, then, is whether the burden Jeffco has imposed "is constitutionally permissible." *Fulton v. City of Phila.*, 593 U.S. 522, 532–33 (2021). It is not. Jeffco's policy triggers—and fails—strict scrutiny in multiple, independent ways. First, it imposes *Mahmoud*-type burdens. *See* Thomas More Society Am. Br. 13–17. Second, it is not generally applicable under *Fulton*. And third, it is not neutral under *Tandon v. Newsom,* 593 U.S. 61 (2021) (per curiam); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017); and *Master-piece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617 (2018).

## A.  Jeffco's policy imposes *Mahmoud*-type burdens that trigger strict scrutiny.

Jeffco's policy triggers strict scrutiny because it interferes with plaintiffs' right to direct their children's religious upbringing. 1.App.027–028 (citing *Wisconsin v. Yoder*, 406 U.S. 205 (1972)). *Mahmoud* reaffirmed *Yoder* and clarified that *Yoder*'s free-exercise principles protect against schools indoctrinating children on LGBTQ issues. That's what Jeffco's policy does here.

1. **The complaint alleges Jeffco substantially interferes with the religious upbringing of plaintiffs' children.**

Opposite-sex rooming assignments contravene "the religious beliefs and practices [parent plaintiffs] wish to instill in their children," and that their children wish to follow. *Mahmoud*, 606 U.S. at 565; *see* 2.App.406 (complaint). Yet Jeffco's policy does what plaintiffs' faith forbids. 2.App.397–99. By rooming a male in girls' rooms just because he identifies as female (or vice versa), Jeffco presents as normative the controverted view that a male who declares he's a girl is in fact a girl and must be treated as such.

Jeffco will not allow plaintiffs to opt their children out of opposite-sex rooming assignments. Appellees' Br. 24–25; *accord* 2.App.386, 397. It will not even agree to notify plaintiffs if it decides to room their children with the opposite sex. 2.App.402; 2.App.408. That states a claim under *Mahmoud*. 606 U.S. at 565.

By denying an opt-out, Jeffco has conditioned student plaintiffs' participation in overnight activities on plaintiffs' "willingness to accept a burden on their religious exercise." *Id*. at 561; *see Trinity Lutheran*, 582 U.S. at 458 (condemning policies that "deny[] a generally available benefit solely on account of religious identity"). Consider the Brinkmans' daughter. She wanted to stay overnight at Outdoor Lab. 2.App.394. But Jeffco maintained that if she did, it could room her with the opposite sex. 2.App.394–95. Jeffco conditioned her overnight

10

participation on her parents' willingness to contravene "the religious beliefs and practices" they wish to instill, *Mahmoud*, 606 U.S. at 565, which they could not do.

Participation in overnight school trips like Outdoor Lab "is a public benefit." *Id.* at 561. And the complaint plausibly alleges that Jeffco either denies that benefit or conditions full access to it on plaintiffs' willingness to give up their religious beliefs.

Finally, Jeffco's "decision to withhold notice to parents" amounts to an additional *Mahmoud* burden. *Id.* at 550. Contrary to Jeffco's claim, it does *not* adequately notify parents before trips that it may room their children with the opposite sex under its policy. *See* 1.App.116; 1.App.123; 1.App.125; 1.App.132; 2.App.362; 2.App.371. Nor will it notify them when it does. Without notice, parents have no chance to object and protect their children from the harms the Waileses and Rollers suffered. 2.App.395.

Jeffco's main attempt to distinguish *Mahmoud* relies on a fractured, unpublished Sixth Circuit decision. Appellees' Br. 27 (citing *Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 23-3740, 2025 WL 2453836 (6th Cir. Aug. 26, 2025) (unpub.)). The *Bethel* majority refused to extend *Mahmoud* to a school policy that allowed students to use on-campus, communal restrooms based on gender identity. 2025 WL 2453836, at *1. The majority noted that students were not "required" to use the communal restrooms. *Id.* at *7. *Bethel*, then, did not involve

11

students excluded from school activities or forced to share communal spaces, as here.

Adding to that, Judge Larsen wrote separately to contest the view that *Mahmoud* applies only to policies that are both "compulsory" and "instructional." *Id.* at *12–13 (Larsen, J., concurring in part and concurring in the judgment). Judge Larsen's opinion tracks the Supreme Court, which has applied *Mahmoud* beyond compulsory instructional settings. *E.g.*, *Miller v. McDonald*, No. 25-133, 2025 WL 3506969 (U.S. Dec. 8, 2025) (vacating judgment against Amish parents' free-exercise challenge to the application of a student-vaccine mandate and remanding for reconsideration in light of *Mahmoud*). And *Mahmoud* upheld *Yoder*, which looked beyond the curriculum of "the modern high school" to the broader "social environment" that undermined "the values promoted by Amish society." *Yoder*, 406 U.S. at 211–12. *Mahmoud* rejected the claim that *Yoder* was confined to its facts. *Mahmoud*, 606 U.S. at 558.

Given *Mahmoud's* direct application here, it was reversible error for the district court to ignore it. This Court should reverse dismissal.

### 2.    Jeffco's response confirms plaintiffs' entitlement to an injunction under *Mahmoud.*

With its heavy focus on the preliminary-injunction record, Jeffco's brief all but concedes that the complaint's well-pleaded allegations state a claim under *Mahmoud*. Appellees' Br. 28–30. The complaint alleges

that Jeffco does not notify parents. 2.App.386. So Jeffco cannot justify the dismissal based on its beyond-the-pleadings (and contrary-to-the-record) claim that it "notifies all families" of its policy. Appellees' Br. 28. And because the complaint alleges that certain trips are part of the curriculum or part of participating on an athletic team, Jeffco also can't claim overnight trips are "never mandatory" or "part of Jeffco's required curriculum." Appellees' Br. 29.

The same is true for Jeffco's claim that its policy is not "normative," *id.*, because it "grants any student an accommodation for any reason" so no student would "feel pressure to conform," *id.* at 30. The complaint plausibly alleges that (1) Jeffco refuses to allow student plaintiffs to room with only the same sex, 2.App.397; (2) Jeffco forces students to miss formative trips unless they consent to sharing a bedroom with an opposite-sex student, 2.App.397, or bring their parents along at great cost, 2.App.394–95; and (3) D.W., B.R., and A.G.B. all felt great pressure to conform, 2.App.366–67; 2.App.373; 2.App.394. Parents feel that pressure, too. 3.App.600.

By rooming a male in a girls' room because that male identifies as a girl (or vice versa), Jeffco presents as normative the contested view that he *is* a girl and that girls in his room should treat him like one. As pleaded, Jeffco's expectation for students to accept those views as normative is clear. *See* 2.App.366–67; 2.App.370–73.

13

To be sure, Jeffco's evidentiary arguments also fail to defeat plaintiffs' preliminary-injunction request. Those arguments—and its after-the-fact claims about other "accommodations" it could have offered plaintiffs—are not just beyond the pleadings but contrary to them. As discussed below, Jeffco's so-called accommodations for religious observers (including "not attending" and "participating without spending the night," Appellees' Br. 29) are penalties. Those same isolating "accommodations" would violate Jeffco's policy if they were afforded students who identify as transgender. 3.App.429 (identifying four "goals" that govern how Jeffco must accommodate students' gender identity preferences in the planning of their sleeping arrangements).

Here, Jeffco's policy of secretly rooming students with the opposite sex—while denying parents notice and an ability to opt out—imposes a burden of the same character as those in *Mahmoud* and *Yoder*. Jeffco cannot evade *Mahmoud*, so strict scrutiny applies.

## B. Jeffco's policy is not generally applicable, so it triggers strict scrutiny under *Fulton*.

Jeffco's policy also triggers strict scrutiny because it contains "a mechanism for individualized exemptions." *Fulton*, 593 U.S. at 533 (citation modified). Plaintiffs allege, and the policy's plain text proves, that Jeffco provides a system in which school officials assess "the needs of students who are transgender . . . on a case-by-case basis with the goals of [1] maximizing [their] social integration, [2] providing equal

opportunity to participate in overnight activity and athletic trips, [3] ensuring [their] safety and comfort, and [4] minimizing stigmatization." 3.App.429 (citation modified). What's more, plaintiffs allege that Jeffco in fact exercised its discretion when it allowed a female student who identified as nonbinary to room in the "Male Bunkhouse" with B.R. 2.App.371–73. Those allegations state a *Fulton* claim.

Jeffco's contrary arguments show *Fulton*'s application. On one page, with no support, Jeffco says its policy "does not provide for individualized exemptions." Appellees' Br. 22. Eight pages later, it contradicts itself and says it "grants any student an accommodation for any reason." *Id*. at 30. That means Jeffco makes "individualized exemptions." *Fulton*, 593 U.S. at 533 (citation modified). But it discriminates in exercising that discretion because while Jeffco accommodates transgender students, it ignored, denied, or penalized plaintiffs' children when accommodations were sought. 2.App.383–93.

Jeffco also says that it uniformly rooms students according to their "consistently asserted" gender identity—without exception. Appellees' Br. 23. But the pleaded example of Jeffco assigning a female who identified as "nonbinary"—neither as a boy or a girl—in the "Male Bunk House" destroys that claim. 2.App.371–73. For Jeffco's assertion to be true, it would have to room all students according to the "huge variety" of gender identities, including nonbinary and many others. See

*United States v. Skrmetti*, 605 U.S. 495, 577 (2025) (Alito, J., concurring) (recognizing some "identify permanently or temporarily with both sexes, neither sex, or some other identity"). Jeffco does not do that.

For preliminary-injunction purposes, Jeffco cites two instances when it roomed student counselors at Outdoor Lab by gender identity. 3.App.647–654; Appellees' Br. 5. That Jeffco applied its policy to place opposite-sex students in leadership positions in intimate settings contributes to—rather than alleviates—the violations of plaintiffs' rights. Nor do these two examples contradict that the Outdoor Lab FAQ page, which incorporates the Transgender Students Policy, 1.App.109, invites parents to ask "[i]ndividual questions," 1.App.103, and promises that "[a]ccommodations for most student needs can be met," 1.App.087. Jeffco's unwillingness to accommodate applies only to *plaintiffs*.

Because Jeffco maintains a system of individualized accommodations, it must extend that system to plaintiffs' religious convictions. *Fulton*, 593 U.S. at 533. It has not. So strict scrutiny applies.

## C.    **Jeffco's policy is not neutral.**

Plaintiffs plausibly allege that Jeffco's policy is not neutrally applied, and those allegations must be accepted. 2.App.408–09. There is an unconstitutional disparity between how Jeffco accommodates students' gender-identity preferences and how it fails to accommodate students' religious convictions. *Tandon*, 593 U.S. at 62 (requiring a

policy that "treat[s] *any* comparable secular activity more favorably than religious exercise" to satisfy "strict scrutiny") (emphasis added). If "[t]he Free Exercise Clause bars even subtle departures from neutrality on matters of religion," it surely prohibits Jeffco from openly disfavoring religious accommodations. *Masterpiece Cakeshop*, 584 U.S. at 638 (citation modified).

Jeffco's policy establishes both the relevant comparator and the disparity. When planning sleeping arrangements for students who identify as transgender, Jeffco seeks to "[1] maximiz[e] [their] social integration, [2] provid[e] equal opportunity to participate in overnight activity and athletic trips, [3] ensur[e] [their] safety and comfort, and [4] minimize[e] stigmatization." 3.App.429 (citation modified). But when students seek a religious accommodation, Jeffco abandons these goals.

Jeffco says it has "accommodated" religious students by allowing them to skip overnight activities, participate only during the day, or forgo team travel altogether. Appellees' Br. at 29–30. Those are penalties—penalties not imposed on those who identify as transgender.

Telling the Brinkmans' daughter that she may attend Outdoor Lab only as a "day student" if she refuses to share a bunk house or shower facilities with a male did not maximize her social integration, provide an equal opportunity to participate, ensure her comfort and safety, or minimize stigmatization. It singled her out, excluded her from a core part of the program, and penalized her and her family for their

17

religious beliefs. It cost her a once-in-a-lifetime opportunity, Mrs. Brinkman a week of work, and more.

For preliminary-injunction purposes, the Court should disregard Jeffco's spin that day participation was the Brinkmans' "decision." 3.App.651–52; Appellees' Br. 8–9. The Brinkman's sworn testimony "specified that [they] wanted an accommodation that would allow [their] daughter to attend all of Outdoor Lab including staying overnight, so she could participate fully like all the other children," but Jeffco denied that request. 3.App.595–96. The same is true of Jeffco telling the Perlmans' daughter that varsity basketball is optional, or that she need not travel with her team. This, too, is a penalty.

In short, Jeffco treats the secular interest of rooming according to gender identity as worthy of full accommodation and protection, while treating religious interests in rooming with only the same sex as grounds for exclusion from school benefits. That unequal treatment triggers strict scrutiny under *Tandon*.

Jeffco's decision to remove the accommodation language from the policy after the Waileses requested an accommodation, 2.App.386, also shows at least a "slight suspicion" of religious intolerance. *Masterpiece Cakeshop*, 584 U.S. at 638–39; *see Mahmoud*, 606 U.S. at 538–40 (discussing school board's decision to "rescind[] parental opt outs"). That is enough to state a claim under *Masterpiece Cakeshop*.

Attempting to distinguish *Tandon* and *Masterpiece*, Jeffco relies primarily on *St. Mary Catholic Parish v. Roy*, 154 F.4th 752 (10th Cir. 2025). But *St. Mary* confirms that even incidental burdens on religion must arise from policies that are neutral and generally applicable—and warns that governments may violate the Free Exercise Clause through "subtle departures from neutrality." *Id*. at 766. Unlike the statute in *St. Mary*, Jeffco's policy is not generally applicable and allows exceptions. And its unequal-accommodation regime is an obvious (not merely subtle) departure from neutrality. Nor does *St. Mary* address *Mahmoud* or *Yoder*. So it does not disturb the rules set forth in those cases. Thus, the burdens imposed by Jeffco's policy trigger strict scrutiny.

### D.    Jeffco cannot satisfy strict scrutiny.

Strict scrutiny is "rarely" satisfied on a motion to dismiss because strict scrutiny places the burden on the government to justify its policy on the facts as pleaded. *Finch v. Peterson*, 622 F.3d 725, 728 (7th Cir. 2010). Here, Jeffco fails both prongs, beginning with narrow tailoring.

### 1.    Jeffco's policy is not narrowly tailored.

Jeffco must show that its application of its policy to these plaintiffs is narrowly tailored to further its asserted interests. *Fulton*, 593 U.S. at 541. It cannot.

As pleaded, Jeffco refuses obvious, less-restrictive alternatives: same-sex rooming for student plaintiffs or a religious opt-out or opt-in

that would allow students to participate fully in overnight activities without violating their beliefs. 2.App.386. Instead, Jeffco insists on applying its policy in an unequal way that forces students to choose between full participation in overnight activities and adherence to their faith. That defeats narrow tailoring.

A policy is not narrowly tailored when the government has less restrictive means of achieving its goals. *Fulton*, 593 U.S. at 542. Here, Jeffco already plans sleeping arrangements on a case-by-case basis and tailors those arrangements to individual student needs. 3.App.429. Accommodating religious objections to opposite-sex sleeping arrangements will not undermine its interests when it already accommodates gender-identity preferences.

Nor can Jeffco rescue narrow tailoring by offering exclusion as an "accommodation." Allowing religious students to miss overnight activities, participate only during the day, or forgo team travel is a penalty.

Jeffco also cannot go beyond the pleadings regarding the feasibility of the alternatives plaintiffs seek. Plaintiffs allege that Jeffco knows and tracks information about the sex of each student and can use that information—without sharing it with anyone, including plaintiffs—to ensure it does not room objecting student plaintiffs with the opposite sex. 2.App.383. Notably, School District 49's amicus brief refutes Jeffco's assertion that school districts in Colorado cannot ensure sex-separated sleeping arrangements. *See* Sch. Dist. 49 Am. Br. 21–23.

20

Again, Jeffco submits its own district-court brief as "evidence" on this point. *See* 2.App.153; Appellees' Br. 6. But the Court must accept plaintiffs' allegations that Jeffco requires parents to submit their child's birth certificate—which identifies their sex—and tracks that information for all students. 2.App.382–83.

The full record also supports preliminary relief. Jeffco cites its superintendent's opinion that changing its policy will "create significant harm and disruptions across Jeffco" and single out transgender students. Appellees' Br. 4; 2.App.195. None of that is true. Plaintiffs can be accommodated without harm to any student. Because Plaintiffs seek accommodations only for themselves, Jeffco's district-wide disruption concerns are unfounded. And Jeffco's complaints of disruption, which are unfounded in any event, "are a product of its own design." *Mahmoud*, 606 U.S. at 567.

Because Jeffco refuses to employ readily available, less-restrictive alternatives, it fails strict scrutiny at the narrow-tailoring prong.

### 2. Jeffco also fails to identify a compelling interest as applied to plaintiffs.

Jeffco also must show a compelling interest in applying its policy to these plaintiffs. The question is not whether Jeffco has a compelling interest in general, but whether it has such an interest in "denying an exception" in this case. *Fulton*, 593 U.S. at 541. It does not.

Jeffco asserts two interests: fostering an educational environment conducive to learning and reducing discrimination against transgender students. Appellees' Br. 31–32. Those are the kind of "broadly formulated interests" that cannot satisfy strict scrutiny. *Fulton*, 593 U.S. at 541 (citation modified). And Jeffco cannot claim a compelling interest in "rescu[ing] one group of students from stigma and isolation by stigmatizing and isolating" religious students.[2] *Mahmoud*, 606 U.S. at 568. Nor does Jeffco ever explain—on the facts as pleaded—how forcing the Waileses', Rollers', Brinkmans', or Perlmans' children to room with the opposite sex advances either interest. So the policy fails strict scrutiny.

## III. Jeffco's policy violates parent plaintiffs' parental rights.

Jeffco does not dispute the existence, history, or fundamental nature of parent plaintiffs' "liberty interest" in "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality); Appellees' Br. 36. Instead, Jeffco says that fundamental right is "far narrower than Plaintiffs assert." *Id.* But in making that claim, Jeffco repeats the district court's errors.

Jeffco's policy authorizes the school district to override, without notice or consent, important parental and custodial decisions about whether children will share a bed, bedroom, or shower facilities with a member of the opposite sex. But the Court has long held that parents'

---

[2] Jeffco's asserted interests are also the subject of heavy scientific debate. *See* Do No Harm Am. Br. 3–9.

22

rights "include the inculcation of moral standards" in their children, among other principles. *Yoder*, 406 U.S. at 233. By cutting parent plaintiffs out of decisions about their children's moral formation—including topics like privacy, bodily integrity, and modesty—Jeffco "strike[s] at the heart of parental decision-making authority on matters of the greatest importance." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 184 (3d Cir. 2005). That violates their fundamental rights.

Decisions about sleeping and bathing arrangements also go to the core of parents' "care, custody, and control of their children." *Troxel*, 530 U.S. at 65 (plurality). Whether a child showers or sleeps next to a person of the opposite sex falls within "the private realm of the family" into which "the State" may not "inject itself." *Id.* at 68. It's the sort of "custodial" decision the Fourteenth Amendment reserves to parents alone—not Jeffco. *See Custodial*, Merriam-Webster's Dictionary (11th ed. 2025) (defined as "relating to, providing, or being protective care"); *see also Troxel*, 530 U.S. at 66 (plurality); Dr. Moschella Am. Br. 15–17 (noting the historical primacy of parental rights against the State's limited authority).

Courts repeatedly recognize that when public schools intrude into such intimate matters—particularly without notice or consent—they violate parents' fundamental rights by intruding on privacy between parents and children. *E.g.*, *Gruenke v. Seip*, 225 F.3d 290, 303–05 (3d Cir. 2000) (administering pregnancy tests implicated right to "familial

integrity"); *Arnold v. Bd. of Educ. of Escambia Cnty.*, 880 F.2d 305, 312–14 (11th Cir. 1989) (steering a minor toward abortion without parental involvement implicated "the right of privacy existing between [parents] and their children"). This case falls within that line of cases.

Jeffco tries to avoid that conclusion by recasting plaintiffs' claim as an effort to "dictate Jeffco's curriculum." Appellees' Br. 36; *see also* Appellants' Br. 45–46. But like the parents in *Mahmoud*, plaintiffs do not seek "the right to micromanage the public school curriculum, but rather to have their children opt out of a particular educational requirement." 606 U.S. at 568. They ask only that *their children* not be placed in overnight accommodations with members of the opposite sex. That is a far cry from "forc[ing] a local school board to allow parents to dictate that their children will attend public school for only part of the school day." *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 702 (10th Cir. 1998). And it bears no relation to the benighted claim that a private school has a right to "adher[e] to a racially discriminatory admissions policy." *Runyon v. McCrary*, 427 U.S. 160, 178 (1976).

Jeffco has identified no interest that justifies secretly overriding parents' decisions about their children's sleeping and showering arrangements. Plaintiffs have stated a viable fundamental parental-rights claim.

## IV.  Jeffco's policy violates student plaintiffs' right to privacy.

Jeffco concedes that "[t]here is, of course, a constitutional right to privacy," including in public schools. Appellees' Br. 38–39 (citing *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982) (per curiam)). Yet in the most intimate settings possible—overnight sleeping arrangements and communal showers far from parents—Jeffco has breached that right and promises to do so again absent injunctive relief.

### A.    Plaintiffs plausibly allege violations of bodily privacy.

Plaintiffs' allegations plausibly allege significant invasions of their right to privacy as a direct result of Jeffco's policy. Jeffco roomed a male with the Waileses' 11-year-old daughter in a girls' hotel room without parental notice or consent. 2.App.363–65. When she objected, Jeffco sent her back into the room, causing her panic and fear. 2.App.367. Jeffco also placed an 18-year-old female in B.R.'s Outdoor Lab cabin, where the lack of privacy was so acute that B.R. and other boys refused to shower for the duration of the trip out of embarrassment and fear. 2.App.373. Boys resorted to undressing in sleeping bags to avoid doing so in front of a female counselor. 2.App.373.

Jeffco refuses to ensure that the Perlmans' daughter—who was sexually harassed by a male Jeffco student—will not be required to room with a male student on any upcoming trips subject to the policy. 2.App.376–77. At the pleading stage, the Court must accept these allegations as true. Jeffco says it "allow[s]" privacy. Appellees' Br. 41.

But allowing privacy is not guaranteeing it, and Jeffco has repeatedly violated that commitment anyway.

Beyond the pleadings, and as may be relevant to the preliminary injunction analysis, B.R.'s verified, first-hand account about what happened at Outdoor Lab, 2.App.329, contradicts Principal Ryan Bazz's after-the-fact spin, 2.App.180–81. B.R. and his male classmates were "expected to change clothes in a small cabin full of bunks without a lot of room to keep to [them]selves." 2.App.329. With no time to change in bathroom stalls, "boys in [his] cabin were changing while lying down inside sleeping bags to avoid changing in front of a female counselor." 2.App.329. The female counselor "stood directly in front of the showers and faced the showers while timing" the boys. 2.App.329. And the shower curtains leave "gaps where any counselor could see in." 2.App.329–30. That is the type of privacy violation a preliminary injunction is needed to prevent.

## B.    Jeffco cannot justify its privacy infringements.

A child's expectation of privacy is at its apex when sleeping, changing clothes, or showering—especially during overnight trips. *See* WOLF Am. Br. 17 (detailing expectation of privacy). Jeffco offers no legitimate justification for overriding that privacy. Jeffco already protects transgender students' privacy by "ensuring *[their]* safety and

comfort" on overnight trips. 3.App.429. It simply refuses to extend comparable protection to other students.

Jeffco argues that what happened here is not as severe as privacy violations in prison cases like *Cumbey* or *Doe v. Luzerne County*, 660 F.3d 169, 175–76 & n.5 (3d Cir. 2011). Appellees' Br. 39–40. But children do not have lower privacy expectations than prisoners. And Jeffco is not responsible for adults. That Jeffco resorts to comparing school children to adult prisoners speaks volumes about its position.

Jeffco's reliance on *Doe v. Boyertown Area School District*, 897 F.3d 518 (3d Cir. 2018), and *Parents for Privacy v. Barr,* 949 F.3d 1210 (9th Cir. 2020), fares no better. Those cases concerned access to school bathrooms during the school day—not overnight sleeping and shower-ing arrangements far from parents. Neither case grappled with the heightened privacy interests present here. Nor did those schools tell students their only alternative was to forgo participation in generally available educational benefits—benefits that 91% of all school-age children in Jefferson County enjoy. Moms for Liberty Am. Br. 12–14.

Jeffco's policy therefore violates student plaintiffs' constitutional right to bodily privacy. The district court's dismissal should be reversed.

## V. Plaintiffs satisfy all the preliminary-injunction factors.

Plaintiffs are entitled to a preliminary injunction.

27

*First*, as shown here and in plaintiffs' opening brief, they are likely to succeed on their claims. Jeffco's response confirms that likelihood in several respects.

*Second*, this case presents textbook irreparable harm. The loss of constitutional rights—even for a short time—constitutes irreparable injury. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003). And that is true as to each constitutional right violated here.

The verified facts also show that the harm is ongoing and imminent. Jeffco concedes it will continue applying its policy to overnight trips. And student plaintiffs still intend to participate in upcoming overnight activities and athletic trips. 2.App.395. Yet Jeffco conditions their participation in those activities on plaintiffs' willingness to accept a burden on their constitutional rights.

Stopping short of promising not to room student plaintiffs with the opposite sex, Jeffco relies on half-hearted statements from its staff that plaintiffs may *discuss* and try to "coordinate" "other rooming options," including a lower-occupancy room on some trips or rooming with parents on others. 2.App.242; 2.App.246; Appellees' Br. 7. These options include only costly alternatives that single out plaintiffs or rob them of the benefits of overnight activities. *See* 3.App.641–43; Appellees' Br. 9–10. And no matter the number of students in the room, Jeffco never *guarantees* same-sex rooming.

*Third*, the equities overwhelmingly favor plaintiffs. Jeffco already takes advantage of parents' expectation that boys and girls are roomed separately. 2.App.355. Requiring Jeffco to meet that normal and long-standing expectation for student plaintiffs imposes no cognizable harm to anyone. By contrast, denying injunctive relief would force plaintiffs to suffer irreparable harm and the impermissible choice between the exercise of their constitutional rights and their children's equal participation in generally available, public-school activities. And Jeffco offers no evidence—beyond speculation—that accommodating plaintiffs would harm other students. The record belies such a claim.

*Fourth*, preventing the violation of constitutional rights is "always in the public interest." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (citation modified). This case is no exception.

## CONCLUSION

This Court should reverse the district court's dismissal and remand with instructions for the district court to enjoin Jeffco from rooming student plaintiffs with the opposite sex on any upcoming trips.

Dated: January 30, 2026

Respectfully submitted,

*s/Noel W. Sterett*

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001

Noel W. Sterett
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176

(616) 450-4235                          (571) 707-4655
jbursch@ADFlegal.org                    nsterett@ADFlegal.org

Katherine L. Anderson
ALLIANCE DEFENDING FREEDOM              David A. Cortman
15100 N. 90th Street                    ALLIANCE DEFENDING FREEDOM
Scottsdale, AZ 85260                    1000 Hurricane Shoals Road N.E.
(480) 444-0020                          Suite D-1100
kanderson@ADFlegal.org                  Lawrenceville, GA 30043
                                        (770) 339-0774
                                        dcortman@ADFlegal.org

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,431 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: January 30, 2026

*s/Noel W. Sterett*
Noel W. Sterett
*Counsel for Appellants*

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir.
R. 25.5;

(2) if required to file additional hard copies, that the ECF
submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the
most recent version of a commercial virus scanning program, Cortex
XDR, Agent version 7.8.1, and according to the program are free of
viruses.

*s/Noel W. Sterett*
Noel W. Sterett
*Counsel for Appellants*

32

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*s/Noel W. Sterett*
Noel W. Sterett
*Counsel for Appellants*